**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

MICHAEL MATANKY, *et al.*,

Plaintiffs,

v.

GENERAL MOTORS LLC,

Defendant.

Case No. 2:18-cv-10601-VAR-APP

Hon. Victoria A Roberts

Magistrate Judge Anthony P. Patti

**PLAINTIFFS' OPPOSITION TO GENERAL MOTORS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT AND TO STRIKE CERTAIN CLASS ALLEGATIONS**

# TABLE OF CONTENTS

**Page**


COUNTER STATEMENT OF ISSUES PRESENTED ........................................ xii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..............................xv

INTRODUCTION ..........................................................................................1

FACTUAL BACKGROUND ............................................................................3

1. PLAINTIFFS PLEAD VIABLE IMPLIED WARRANTY CLAIMS ..........................................................................................4

   A. Plaintiffs allege the Z06s were unfit for their ordinary purpose. ..........................................................................4

   B. Plaintiffs properly plead the required elements of privity. ...................7

2. PLAINTIFFS PLEAD ADEQUATE FACTS TO SUSTAIN A CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT ..........................................................................................9

3. PLAINTIFFS PLEAD FRAUDULENT CONCEALMENT ........................10

   A. Plaintiffs plead with the requisite specificity. .....................................11

   B. Plaintiffs have properly plead that GM had a duty to disclose. ..........................................................................14

      1. Plaintiffs plead that GM knew of the overheating defects. ..........................................................................14

      2. Plaintiffs allege that GM had a duty to disclose under state law. ..........................................................................16

   C. Plaintiffs Manukyan (CA), Kanas (NH), and Nakel (PA) plead injury. ..........................................................................20

4. PLAINTIFFS PROPERLY PLEAD STATUTORY FRAUD CLAIMS ..........................................................................................21

A. Plaintiffs plead all required elements under the different consumer protection statutes. ....................21

B. Plaintiffs have adequately alleged GM's knowledge of a defect. ....................23

C. GM's state-specific arguments have no merit....................23

1. Consumer class actions are appropriate under Georgia, South Carolina, and Tennessee law. ....................23

2. Colorado's consumer protection statute does not prohibit class claims for money damages. ....................24

3. Michigan does not exempt motor vehicle sales from the MCPA....................24

4. Plaintiff correctly alleges injunctive relief under Georgia law. ....................25

5. Plaintiffs plead viable claims under the OCSPA ....................25

6. Claims for injunctive relief under California's UCL and FAL are expressly cumulative to other legal remedies. ....................26

7. Transactions under the New York statute encompass deception by the defendant....................27

8. Plaintiffs Manukyan (CA), Kanas (NH), and Nakel (PA) allege sufficient injury....................28

5. PLAINTIFFS PLEAD VIABLE UNJUST ENRICHMENT CLAIMS. ....................29

6. PLAINTIFFS NATIONAWIDE MMWA AND NEW YORK CLASS ALLEGATIONS SHOULD NOT BE STRICKEN....................31

A. It is premature to rule on the manageability of multi-state sub-class groupings reflecting the variations in underlying state warranty law. ....................31

B. Plaintiffs' standing to represent absent nationwide class members should be determined at class certification..........................33

C. Plaintiffs' standing to represent absent New York class members should also be determined at class certification. .................35

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aberin v. Am. Honda Motor Co., Inc.*,
2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ....................26

*Am. Suzuki Motor Corp. v. Superior Court*,
37 Cal. App. 4th 1291 (1995) ....................6

*Amin v. Mercedes-Benz USA, LLC*,
301 F. Supp. 3d 1277 (N.D. Ga. 2018)....................23, 25

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................29

*In re Auto. Parts Antitrust Litig.*,
50 F. Supp. 3d 836 (E.D. Mich. 2014) ....................30, 33

*Bearden v. Honeywell Int'l Inc.*,
720 F. Supp. 2d 932 (M.D. Tenn. 2010) ....................17

*Beck v. FCA US LLC*,
273 F. Supp. 3d 735 (E.D. Mich. 2017) ....................15

*Bellinger v. Hewlett Packard Co.*,
2002-Ohio-1643....................17

*Belville v. Ford Motor Co.*,
13 F. Supp. 3d 528 (S.D.W. Va. 2014)....................12

*Boyer v. Diversified Consultants, Inc.*,
306 F.R.D. 536 (E.D. Mich. 2015) ....................32

*Brewart v. Travelers Cas. Ins. Co. of Am.*,
2015 WL 5604439 (E.D. Mich. Aug. 10, 2015)....................29

*Burch v. Whirlpool*,
2017 WL 7370988 (W.D. Mich. Sept 28, 2017) ....................18

*In re Canon Cameras Litig.*,
2006 WL 1751245 (S.D.N.Y. Jun. 23, 2006)....................30

*Carlson v. Gen. Motors Corp.*,
883 F.2d 287 (4th Cir.1989) ....................................................................5

*In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*,
2015 WL 5166014 (E.D. Tenn. June 24, 2015) ...............................................31

*Chaudoin v. Thor Motor Coach, Inc.*,
2017 WL 3485803 (E.D. Mich. Aug. 15, 2017)................................................24

*Counts v. Gen. Motors, LLC*,
237 F. Supp. 3d 572 (E.D. Mich. 2017) ..........................................................34

*Curl v. Volkswagen of Am., Inc.*,
871 N.E.2d 1141 .....................................................................................8

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ...........................................................26, 27

*Dow Chem. Co. v. Mahlum*,
970 P.2d 98 (1998).....................................................................................18

*In re Duramax Diesel Litig.*,
298 F. Supp. 3d 1037 (E.D. Mich. 2018) .........................................................20

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*,
2018 WL 3973153 (D. Kan. Aug. 20, 2018)....................................................23

*Fallick v. Nationwide Mut. Ins. Co.*,
162 F.3d 410 (6th Cir. 1998) ..........................................................................34

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
280 F. Supp. 3d 975 (E.D. Mich. 2017) .........................................10, 14, 21, 22

*Feliciano v. Gen. Motors LLC*,
2016 WL 9344120 (S.D.N.Y. Mar. 31, 2016)..................................................12

*Finnerty v. Howmedica Osteonics Corp.*,
2016 WL 4744130 (D. Nev. Sept. 12, 2016).......................................................8

*Fisher v. Pelstring*,
817 F. Supp. 2d 791 (D.S.C. 2011) ..................................................................17

*Flores v. Southcoast Auto. Liquidators, Inc.*,
226 Cal. Rptr. 3d 12 (Cal. 2017) ....................................................................26

*In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*,
2007 WL 2421480 (E.D. Mich. Aug. 24, 2007)..........................................13, 14

*Garcia v. Chrysler Grp. LLC*,
127 F. Supp. 3d 212 (S.D.N.Y. 2015) ..............................................................18

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,
966 F. Supp. 1525 (E.D. Mo. 1997) ..............................................................6, 18

*In re: Gen. Motors LLC Ignition Switch Litig.*,
2016 WL 3920353 (S.D.N.Y. July 15, 2016)....................................................18

*In re Gen. Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017) ..............................................................16

*Gonzalez v. Pepsico, Inc.*,
489 F. Supp. 2d 1233 (D. Kan. 2007)..................................................................7

*Goshen v. Mut. Life Ins. Co. of N. Y.*,
774 N.E.2d 1190 (N.Y. 2002)...........................................................................27

*Grodzitsky v. Am. Honda Motor Co., Inc.*,
2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ......................................................31

*Hicks v. Kaufman & Broad Home Corp.*
107 Cal.Rptr.2d 761 (Cal. 2001) ......................................................................20

*Hiles Co. v. Johnston Pump Co. of Pasadena, Cal.*,
93 Nev. 73 (1977) ................................................................................................7

*Hoff v. Mercedes-Benz USA, LLC*,
2005 WL 3723201 (Mich. Cir. Ct., Dec. 30, 2005)............................................24

*Janney v. Mills*,
944 F. Supp. 2d 806 (N.D. Cal 2013)................................................................22

*Jimenez v. DaimlerChrysler Corp.*,
269 F.3d 439 (4th Cir. 2001) ............................................................................17

*Jimenez v. Ford Motor Credit Co.*,
2015 WL 9318913 (Mich. Ct. App. Dec. 22, 2015)..........................................24

*Jordan v. City of Cleveland*,
464 F.3d 584 (6th Cir. 2006) .........................................................................29

*Kaatz v. Hyland's Inc.*,
2016 WL 3676697, (S.D.N.Y. July 5, 2016).....................................................34

*Kaufman v. Sirius XM Radio, Inc.*,
751 F. Supp. 2d 681 (S.D.N.Y. 2010) ..............................................................28

*Koscielny v. Ford Motor Co.*,
2006 WL 1726486 (Mich. Cir. Ct. June 21, 2006)...............................................4

*Lass v. Bank of Am., N.A.*,
695 F.3d 129 (1st Cir. 2012)...........................................................................29

*Leibovic v. United Shore Mortg., LLC*,
2016 WL 6395954 (E.D. Mich. Oct. 28, 2016)..................................................30

*Long v. Graco Children's Prods. Inc.*,
2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ..................................................14

*Luong v. Subaru of Am., Inc.*,
2018 WL 2047646 (N.D. Cal. May 2, 2018).....................................................26

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ..........................................................................32

*McPherson v. Kelsey*,
125 F.3d 989 (6th Cir. 1997) ............................................................................7

*Meachum v. Outdoor World Corp.*,
652 N.Y.S.2d 749 (N.Y. 1997).........................................................................28

*Michaels Bldg. Co. v. Ameritrust Co.*,
848 F.2d 674 (6th Cir. 1988) ..........................................................................10

*Mickens v. Ford Motor Co.*,
900 F. Supp. 2d 427 (D.N.J. 2012)..................................................................12

*Miller v. Gen. Motors, LLC*,
2018 WL 2740240 (E.D. Mich. Jun. 7, 2018) ....................................................20

*Mountz v. Glob. Vision Prods., Inc.*,
770 N.Y.S.2d 603 (N.Y. Sup. Ct. 2003)..............................................................27, 28

*Muehlbauer v. Gen. Motors Corp.*,
431 F. Supp. 2d 847 (N.D. Ill. 2006)....................................................................30

*Munning v. Gap, Inc.*,
238 F. Supp. 3d 1195 (N.D. Cal. 2017)................................................................26

*Myers v. BMW of N. Am., LLC*,
2016 WL 5897740 (N.D. Cal. Oct. 11, 2016) ........................................................8

*In re MyFord Touch Consumer Litig.*,
291 F. Supp. 3d 936 (N.D. Cal. 2018)....................................................................7

*In re MyFord Touch Consumer Litig.*,
46 F. Supp. 3d 936 (N.D. Cal. 2014)......................................................................8

*In re MyFord Touch Consumer Litig.*,
2018 WL 887534 (N.D. Cal. Feb. 14, 2018) ..........................................................5

*Nelson v. Nissan N. Am., Inc.*,
894 F. Supp. 2d 558 (D. N.J. 2012)........................................................................25

*In re OnStar Contract Litig.*,
600 F. Supp. 2d 861 (E.D. Mich. 2009) ................................................................24

*Oom v. Michaels Companies, Inc.*,
2017 WL 3048540 (W.D. Mich. July 19, 2017)....................................................32

*Ossolinski v. Ford Motor Co.*,
2014 WL 4638171 (Conn. Super. Ct. Aug. 12, 2014)............................................8

*In re Packaged Ice Antitrust Litig.*,
779 F. Supp. 2d 642 (E.D. Mich. 2011) ................................................................33

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014)....................................................................31

*Persad v. Ford Motor Co.*,
2018 WL 3428690 (E.D. Mich. July 16, 2018)....23, 29

*In re Porsche Cars N. Am., Inc.*,
880 F. Supp. 2d 801 (S.D. Ohio 2012)....9

*In re Processed Egg Prods. Antitrust Litig.*,
851 F. Supp. 2d 867 (E.D. Pa. 2012)....30

*Ram Int'l Inc. v. ADT Sec. Servs., Inc.*,
2011 WL 5244936 (E.D. Mich. Nov. 3, 2011)....13, 14

*Reed v. Arthrex, Inc.*,
2017 WL 4560140 (D. Nev. Oct. 11, 2017)....7

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*,
2016 WL 9775018 (E.D. Mich. Oct. 21, 2016)....6, 24

*Rosipko v. FCA US LLC*,
2015 WL 8007649 (E.D. Mich. Dec. 7, 2015))....22

*Rothe v. Maloney Cadillac, Inc.*,
119 Ill. 2d 288 (1988)....9

*Safransky v. Fossil Grp.*,
2018 WL 1726620 (S.D. Cal. Apr. 9, 2018)....26

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
2009 WL 937256 (N.D. Ill. Apr. 6, 2009)....13

*Seaton v. TripAdvisor LLC*,
728 F.3d 592 (6th Cir. 2013)....13

*Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)....23

*Shah v. Racetrac Petroleum Co.*,
338 F.3d 557 (6th Cir. 2003)....17

*Sloan v. Gen. Motors LLC*,
287 F. Supp. 3d 840 (N.D. Cal. 2018)....25

*Smith v. Ford Motor Co.*,
2004 WL 838063 (D. Kan. Mar. 14, 2004) ........................................................7

*Solo v. United Parcel Serv. Co.*,
819 F.3d 788 (6th Cir. 2016) ........................................................................28

*Sperry v. Crompton Corp.*,
863 N.E.2d 1012 (N.Y. 2007)........................................................................30

*Stewart v. Electrolux Home Prods., Inc.*,
2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) ..................................................15

*In re Takata Airbag Prods. Liab. Litig.*,
2016 U.S. Dist. LEXIS 138976 (S.D. Fla. Sept. 29, 2016)............................7, 17

*In re Takata Airbag Prods. Liab. Litig.*,
2017 WL 2406711 (S.D. Fla. June 1, 2017).....................................................16

*In re Takata Airbags Prods. Liability Litig.*,
No. 15-md-2599, slip op. (S.D. Fla. Oct. 14, 2016) .........................................17

*In re Takata Airbags Prods. Liability Litig.*,
No. 15-md-2599, slip op. (S.D. Fla. Sept. 21, 2016).........................................17

*Tershakovec v. Ford Motor Co.*,
2018 WL 3405245 (S.D. Fla. July 12, 2018) ...........................................*passim*

*Vazquez v. Gen. Motors, LLC*,
2018 WL 447644 (S.D. Fla. Jan. 16, 2018).......................................................11

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
2017 WL 1902160 (D.N.J. May 8, 2017)...........................................8, 9, 16, 23

*Williams v. Scottrade Inc.*,
2006 WL 2077588 (E.D. Mich. July, 24, 2006)................................................13

*Zapata Fonseca v. Goya Foods Inc.*,
2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)....................................................26

*Zwiercan v. Gen. Motors Corp.*,
2003 WL 1848571 (Pa. Com. Pl. Mar. 18, 2003).............................................18

## STATUTES

15 U.S.C. § 2301(7) ....................10
Cal. Bus. & Prof. Code § 17205 ....................26
Colorado Consumer Protection Act ....................24
ERISA ....................33
Ohio Consumer Sales Practices Act ....................25

## OTHER AUTHORITIES

Federal Rules of Civil Procedure 8 and 9(b)'s ....................2
FRCP 8(e)(2) ....................29
Rule 8 ....................2, 10
Rule 9(b) ....................10, 11, 12, 22
Rule 9(b)'s ....................10
Rule 12 ....................3, 15
Rule 23 ....................23, 33, 34
Rules 8 and 9(b) ....................2

# COUNTER STATEMENT OF ISSUES PRESENTED

## Implied Warranty Claims

1. Are Plaintiffs' specific allegations detailing how the overheating defects inherent in the Z06s significantly impair the safety, reliability and operability of the Class Vehicles sufficient to establish Plaintiffs' implied warranty claims?
2. Can Plaintiffs maintain the implied warranty claims in Counts 6, 14, 20, 24, 28, 40, and 53 by demonstrating that privity is not required or by invoking recognized exceptions to the privity doctrine?

## Magnuson-Moss Claim

3. May Plaintiffs seek leave to amend their Complaint to clarify that they are seeking a nationwide Magnuson-Moss claim based on a theory of a breach of implied warranty?
4. Can Plaintiffs maintain a Magnuson-Moss claim as they have plead viable implied warranty claims under state law?

## Fraudulent Concealment Claims

5. Do Plaintiffs' common law and statutory fraud allegations satisfy Rule 9(b) when Plaintiffs specifically allege the what, where, when and how of the alleged deceptive conduct with enough detail to put defendant on notice?

6. Have Plaintiffs established for the fraud-based claims that it was plausible that GM knew of the defect when Plaintiffs' allegations include statements from GM' Chief Engineer, data from specific pre-release testing performed by GM on a race track, and consumer complaints dating from early in the class period?

7. Can Plaintiffs maintain the fraudulent concealment claims in Counts 23, 25, 25, 31, 39, 48, 52, 60, 64, and 70 by establishing a duty to speak within the context of disclosing safety defects or that GM had superior or exclusive knowledge not within the fair and reasonable reach of Plaintiffs?

8. Have Plaintiffs plead adequate injury for their fraud-based claims under California, New Hampshire and Pennsylvania law by alleging that they suffered economic loss, or that their Z06s overheat consistent with the defects at issue?

**Consumer Protection Claims**

9. Can Plaintiffs maintain their consumer protection claims by alleging that they had relied upon GM's representations and advertisements and that they would have made a different purchasing decision, 'but for' GM's fraud?

10. Does the Colorado Consumer Protection Act allow class actions to continue when Plaintiffs seek monetary damages?

11. Can claims for automotive defects under the MCPA proceed, as the specific act of selling or manufacturing automobiles is not regulated and therefore not excluded from the MCPA?

12. Do Plaintiffs' allegations that GM continues to install defective cooling systems and that the company has failed to fix the Z06 sufficient to establish ongoing and future harm?

13. Is the two-year statute of limitations tolled under Ohio Consumer Sales Practices Act due to Plaintiffs' allegations of fraudulent concealment? And have Plaintiffs identified litigation that is substantially similar to these allegations sufficient enough to provide notice to GM?

14. Do the UCL and FAL explicitly permit injunctive relief as a cumulative remedy when plead in the alternative to legal remedies at the pleadings stage?

15. Can Plaintiffs' claims continue under New York General Business Law § 349, 350, when at least some part of the underlying transaction took place in New York state?

**Unjust Enrichment Claims**

16. Must Plaintiffs' unjust enrichment claims be sustained where such claims are pled in the alternative to Plaintiffs' other claims, and where Defendant has benefitted from selling and leasing the Z06s—whose values were artificially inflated by GM's concealment of the overheating defects?

**Class Certification**

17. Can class actions continue under the consumer protection laws of Georgia, South Carolina and Tennessee so long as applying Rule 23 does not abridge, enlarge or modify any substantive right?

18. When Plaintiffs allege common facts, is any further consideration of predominance premature on a Rule 12 Motion?

19. When the named plaintiffs have standing to assert their own claims, whether they can assert claims on behalf of absent class members under the laws of other states presents a question of typicality to be determined under Rule 23. The named plaintiffs here each have standing to assert their own claims. Is this sufficient to proceed past the pleading stage on behalf of absent class members from other states?

Plaintiffs answer "yes" to each of these questions.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Plaintiffs Plead Viable Implied Warranty Claims.**

- *In re MyFord Touch Consumer Litig.*, 2018 WL 887534 (N.D. Cal. Feb. 14, 2018)
- *Tershakovec v. Ford Motor Co.*, 2018 WL 3405245 (S.D. Fla. July 12, 2018)
- *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014)
- *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233 (D. Kan. 2007)
- *Rothe v. Maloney Cadillac, Inc.*,119 Ill. 2d 288 (1988)

**Plaintiffs Plead Adequate Facts To Sustain A Claim Under The Magnuson Moss Warranty Act.**

- Federal Rules of Civil Procedure 15(a)(2)

**Plaintiffs Plead Fraudulent Concealment.**

- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, (E.D. Mich. 2017)
- *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, (S.D.N.Y. 2017)
- *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *20 (D.N.J. May 8, 2017)
- *In re Takata Airbag Prods. Liab. Litig.*, 2017 WL 2406711 (S.D. Fla. June 1, 2017)
- *In re FCA US LLC Monostable Elec. Gearshift Litig.*,280 F. Supp. 3d 975 (E.D. Mich. 2017)

**Plaintiffs Properly Plead Statutory Fraud Claims.**

- *Vazquez v. Gen. Motors, LLC,*2018 WL 447644 (S.D. Fla. Jan. 16, 2018)
- *Tershakovec v. Ford Motor Co*., 2018 WL 3405245 (S.D. Fla. July 12, 2018)
- *In re FCA US LLC Monostable Elec. Gearshift Litig*., 280 F. Supp. 3d 975, (E.D. Mich. 2017)
- *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 874 (E.D. Mich. 2009)
- *Hoff v. Mercedes-Benz USA, LLC*, 2005 WL 3723201, (Mich. Cir. Ct., Dec. 30, 2005)
- *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277 (N.D. Ga. 2018)
- *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018)
- *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558 (D. N.J. 2012)
- *Safransky v. Fossil Grp.*, 2018 WL 1726620, (S.D. Cal. Apr. 9, 2018).
- *Mountz v. Glob. Vision Prods., Inc.*, 770 N.Y.S.2d 603, (N.Y. Sup. Ct. 2003)
- *In re Duramax Diesel Litig*., 298 F. Supp. 3d 1037 (E.D. Mich. 2018)

**Plaintiffs Plead Viable Unjust Enrichment Claims.**

- *Glenn v. Hyundai*, 2016 WL 7507766, (C.D. Cal. Nov. 21, 2016).

**Plaintiffs Nationwide MMWA and New York Class Allegations Should Not Be Stricken.**

- *Shady Grove Orthopedics Assoc., P.A. v. Allstate Ins. Co*., 559 U.S. 393 (2010)
- *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2018 WL 3973153, (D. Kan. Aug. 20, 2018).
- *In re Auto Parts*, 2013 WL 2456612, (E.D. Mich. June 6, 2013)

## INTRODUCTION

A "$108,000 problem."[1] This is what GM delivered to its customers when it sold the Corvette Z06 vehicles, knowing that they could not be safely driven on a race track or a public roadway. Nevertheless, GM aggressively marketed the Z06s as "conceived on the track," encouraging consumers to pay hefty prices for "track-proven" cars with "race-proven design" and "track-focused" performance packages. For instance, GM's marketing materials showed the Z06s on racetracks, its press kits detailed the ways in which the Z06s were designed for high-performance, and GM touted its track events like the "Corvette Owner Schools" where Z06 owners could develop their track skills.

But at no point during GM's extensive marketing campaign did the company disclose that serious design defects would cause the Z06s to overheat on a track in a matter of minutes—creating a dangerous scenario where the car rapidly decelerates and enters "Limp Mode." These defects not only render the "track" cars incapable of withstanding the demands of the high performance driving for which they were marketed and purchased, but also present safety concerns on public roadways. And, while GM has acknowledged that the overheating defects

[1] Complaint ¶ 184 at 89. All "¶" references are to the Consolidated Class Action Complaint (D.E. 17). All "Mot." references are to GM's Motion to Dismiss (D.E. 22). Unless specified, all references to "Z06" or "Class Vehicles" are to the 2015, 2016 and 2017 Corvette Z06s. Unless specified, all internal citations have been omitted.

exist, and attempted a fix, the fix does not work. So, Plaintiffs are indeed stuck with a $108,000 problem.

GM now moves to dismiss all claims. Plaintiffs respond as follows:

**Plaintiffs properly plead implied warranty claims.** Plaintiffs allege the Z06s contain defects that substantially impair the safety, operability, and reliability of the vehicles so as to render them unfit for their ordinary purpose. In addition, either privity is not required or Plaintiffs adequately plead an exception. Thus, Plaintiffs can maintain their remaining implied warranty claims.[2] *See* § I, *infra*.

**Plaintiffs' fraud-based allegations more than satisfy Rules 8 and 9(b).** Plaintiffs plead with particularity specific GM misrepresentations and omissions and that they were induced to purchase based on them. Plaintiffs also provide sufficient detail for all elements underlying their consumer protection claims for the relevant states. Thus, Plaintiffs satisfy Federal Rules of Civil Procedure 8 and 9(b)'s requirements, putting GM on notice of its misconduct. *See* § III & IV, *infra*.

**Plaintiffs may plead unjust enrichment claims**. Plaintiffs' allegations demonstrate a relationship between their detriment and GM's benefit sufficient to maintain unjust enrichment claims. In addition, Rule 8 permits pleading of

[2] Plaintiffs withdraw Count 49 (New York law); Count 65 (Tennessee law); Count 69 (Virginia law), and, Count 73 (Washington law).

equitable claims in the alternative and dismissal of these claims would be premature at this stage. *See* § V, *infra*.

**Class certification arguments are not appropriate in a Rule 12 motion.** Without the benefit of a developed factual record, the Court is currently unable to conduct a rigorous analysis of class certification considerations. It is therefore premature to rule on the manageability of multi-state sub-class groupings and the standing of absent class members. *See* § VI, *infra*.

GM's motion should therefore be denied.

## FACTUAL BACKGROUND

Over the course of 191 paragraphs, Plaintiffs allege that they purchased their vehicles for use on public roads and specialized race tracks (¶ 150) and that, due to overheating defects, the Z06s are dangerous to drive (¶¶ 169-172). Plaintiffs provide specific examples of "dangerous" overheating (¶ 95) and terrifying Limp Mode events at the track and on public roadways (*e.g*. ¶ 23). Plaintiffs maintain that GM explicitly marketed the Z06s as capable of use on race tracks and public roads (¶¶156-167), all the while knowing about the defects and these safety hazards (¶¶156, 176-191). Plaintiffs also plead excerpts from GM's own advertisements and specifically explain what information was misrepresented or omitted and why it was material to consumers. ¶¶ 156-191. Plaintiffs also allege

that GM has yet to provide an adequate fix, (¶¶ 8, 177,178), and that they have been injured as a result of their purchase. (¶¶173-175).

In its rendition of the "facts," GM mischaracterizes Plaintiffs' claims. Mot. 3-6. Plaintiffs do not complain that they were promised "[Z06s that] could be driven on tracks at excessive temperatures for extended periods of time and without regard for the owner's manual instructions." Mot. 6. Yet, as explained in the previous paragraph, these facts are simply not plead. GM also improperly suggests that Plaintiffs' claims are doomed as they failed to plead that they followed the "detailed instructions for track driving" in the owners' manual. Mot. 4. But such pleading is not required.[3]

## ARGUMENT

### I. PLAINTIFFS PLEAD VIABLE IMPLIED WARRANTY CLAIMS

#### A. Plaintiffs allege the Z06s were unfit for their ordinary purpose.

GM contends that Plaintiffs must allege defects that render the vehicle unfit for its ordinary purpose of "providing transportation." Mot. 8. But a vehicle is considered merchantable only when it can provide *safe and reliable* transportation. *Koscielny v. Ford Motor Co.*, 2006 WL 1726486, at *5 (Mich. Cir. Ct. June 21, 2006) (denying summary judgment to Ford on implied warranty claim because "a

[3] "Expecting each Plaintiff to regurgitate that he or she used their vehicle under 'normal' conditions would ostensibly seem conclusory and devoid of any factual underpinning." *See, Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV, 2018 WL 3405245, at *9 (S.D. Fla. July 12, 2018).

vehicle that stalls may be dangerous). Further, proof of a safety condition "is not required to demonstrate unmerchantability; it is merely one way to demonstrate unmerchantability." *In re MyFord Touch Consumer Litig.*, 2018 WL 887534, at *5 (N.D. Cal. Feb. 14, 2018). In addition, "reliability, operability, and substantial freedom from defects … are independent grounds for demonstrating unmerchantability." *Id.*

Plaintiffs provide extensive detail regarding how the Z06 overheating issue significantly impairs the reliability, operability and safety of the Class Vehicles. First, Plaintiffs allege that they purchased the vehicle intending to use it on a track. *e.g.* ¶ 224. But when actually on a track, the Z06s, "go from well over 100 mph to a substantially lower speed and lose power in a matter of seconds" and as a result, "the driver can become disoriented and lose control of the Z06, increasing the risk of an accident." ¶ 169. Plaintiffs also allege that their cars overheat on public roadways during a variety of different conditions, *e.g.* freeways, traffic, mountain driving, (¶¶ 17, 23, 128), which clearly hampers operability.

Moreover, these are not remote occurrences. Mot 8-9. All Plaintiffs plead overheating, and almost all allege at least one Limp Mode incident (¶¶ 17, 23, 29, 34, 95, 40, 45, 50, 55, 61, 67, 71, 77, 82, 87, 102, 108, 111, 118, 123, 128 133-34, 143, 148, 189), if not multiple incidents. And no less than five Plaintiffs assert that Limp Mode happens *every time* they go to the track, (¶ 55, 82, 93, 118, 128).

Finally, Plaintiffs note that any "alleged fix does not help consumers with [the 2015 and 2016 models]" and does not fix the problem, as: "the 2017 [model] still overheats and GM's only answer is to, after the fact, warn owners that automatic transmission have the potential for overheating." ¶ 8. Thus, Plaintiffs plausibly plead that the Z06s are neither safe nor reliable. *Tershakovec v. Ford Motor Co*., 2018 WL 3405245, at *9 (S.D. Fla. July 12, 2018) (holding on similar allegations that plaintiffs "plausibly allege that the vehicles were not fit for the ordinary purpose of being used on a public roadway or racetrack.")

GM's cases, on the other hand, are inapposite. In both *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1297 (1995) *and In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig*., 966 F. Supp. 1525, 1530 (E.D. Mo. 1997) plaintiffs had failed to allege any of them had actually experienced a manifestation of the alleged defect. And in *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016), the plaintiffs failed to allege facts "showing that the vehicle is not fit for the ordinary purpose of safe, comfortable, transportation").

Finally, without citing any law, GM also argues that Plaintiffs' continued use of their vehicles belies their implied warranty claims. Mot. 9. But, courts routinely dismiss continued use arguments in situations, like here, where the defect is persistent and pervasive, (¶ 8) requiring more than a simple replacement part to

repair. *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 947 n.5 (N.D. Cal. 2018) (collecting cases).[4]

**B. Plaintiffs properly plead the required elements of privity.**

GM attempts to do away with eleven claims in one sentence.[5] Not so fast. In most of these states, privity is either not required or there are exceptions that apply.

First, GM is plain wrong that vertical privity is required in Kansas and Nevada. Since *Smith v. Ford Motor Co.,* 2004 WL 838063 (D. Kan. Mar. 14, 2004), Kansas courts have clarified that "the KCPA has abolished any privity requirement in an action for breach of the implied warranty of merchantability involving a consumer transaction under Kansas law." *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1246 (D. Kan. 2007). And many courts have likewise found that Nevada law does not require vertical privity between the parties. *See Hiles Co. v. Johnston Pump Co. of Pasadena, Cal.*, 93 Nev. 73, 79, (1977); *Reed v.*

---

[4] Like in *In re MyFord Touch*, the overheating defects impair the safety, reliability and operability of the Z06s in a persistent manner. GM does not dispute that overheating occurs on a regular basis in the Z06s, and Plaintiffs allege that at least 5 of the 23 vehicles cited in the Complaint (20%) fail *every time* they go to the track. ¶¶ 55, 82, 93, 118, 128.

[5] Unsupported arguments places on improper burden on the Court to essentially "read counsel's minds or to flesh out undeveloped legal arguments" on GM's behalf. *In re Takata Airbag Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 138976, at *157 (S.D. Fla. Sept. 29, 2016). As such, "[i]ssues … unaccompanied by some effort at developed argumentation, are deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).

*Arthrex, Inc.*, 2017 WL 4560140, at *4 (D. Nev. Oct. 11, 2017).[6]

And, while California law does require privity for an implied warranty claim, courts regularly apply a third-party beneficiary exception.[7] *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 984 (N.D. Cal. 2014).

Similarly, GM's own cases find an agency exception under Connecticut and Ohio law. For instance, the court in *Ossolinski v. Ford Motor Co.*, 2014 WL 4638171, at *10 (Conn. Super. Ct. Aug. 12, 2014), recognized that a plaintiff may overcome the privity requirement by demonstrating an agency relationship between the manufacturer and dealer-seller at the time of sale, but the court found no such evidence after three days of trial. And in *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1148, the Ohio Supreme Court also recognized the agency exception, but ultimately found none existed in this instance when the dealership initially purchased the car as a rental car and only later decided to sell it.[8] Here, conversely, plaintiffs allege an agency relationship from the outset." ¶¶ 210, 211.

[6] GM's reliance on *Finnerty v. Howmedica Osteonics Corp.*, 2016 WL 4744130, at *7 (D. Nev. Sept. 12, 2016) is of limited use, as unlike here, the plaintiff in *Finnerty* failed to respond to defendant's privity arguments.

[7] GM's case *Myers v. BMW of N. Am., LLC*, 2016 WL 5897740, at *8 (N.D. Cal. Oct. 11, 2016) also finds a third-party beneficiary exception under California law, though in that case the plaintiff did not allege reliance on any written materials. Plaintiffs here allege the written materials they relied upon. *See, e.g. Myers* ¶¶ 156-167.

[8] *See also, In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *15-6 (implied warranty claim sustained under third-party beneficiary theory).

Finally, courts have established privity exceptions under Georgia and Illinois law where a manufacturer provides a written warranty. In Georgia, an express warranty can supplant the privity requirement for implied warranty claims when: "[b]y acting through a dealer and by making the warranty part of the sale between the dealer and purchaser, the manufacturer evinces an intent to contract with the remote purchaser."[9] *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 845 (S.D. Ohio 2012) (applying Georgia law and collecting cases). And Illinois courts have likewise found privity between a purchaser and a car manufacturer when the latter provides a written warranty, as here.[10] *See Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 295 (1988).

## II. PLAINTIFFS PLEAD ADEQUATE FACTS TO SUSTAIN A CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT

GM admits a MMWA claim is "directly dependent upon a sustainable claim of breach of warranty." Mot. 11. And Plaintiffs plead facts to sustain a MMWA claim based on a breach of implied warranty. *See,* ¶¶ 209-210,212-214 and § I, *supra*. So, Plaintiffs respectfully ask for leave to amend the Complaint to state that

---

[9] The Court dismissed the plaintiff's claim in *Porsche* because he failed to plead facts demonstrating that the sale was essentially between himself and the manufacturer. *Id.* Here, Plaintiff Grant purchased at an authorized GM dealership and the vehicle is covered by the manufacturer's warranty. ¶ 57.

[10] GM does not dispute the existence of an express warranty pertaining to the Z06s. Mot. 11, Exs. 2, 3, 4.

Plaintiffs' implied warranty claims are covered under 15 U.S.C. § 2301(7).[11]

## III. PLAINTIFFS PLEAD FRAUDULENT CONCEALMENT

While fraudulent concealment claims must be plead with particularity, "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony." *Michaels Bldg. Co. v. Ameritrust Co*., 848 F.2d 674, 679 (6th Cir. 1988). Further, "the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Id.; see also, In re FCA US LLC Monostable Elec. Gearshift Litig*., 280 F. Supp. 3d 975, 1003 (E.D. Mich. 2017) (denying motion to dismiss fraud claims where plaintiff identified the defect, alleged knowledge of the defect, detailed incidents involving the defect, and alleged that defendant withheld knowledge of defect to induce plaintiffs to pay a premium for their car). As set forth below, Plaintiffs have done exactly this.

### A. Plaintiffs plead with the requisite specificity.

According to GM, Plaintiffs' fraudulent concealment claims must be dismissed because Plaintiffs fail to allege "what specific facts GM allegedly misrepresented or omitted", and "when or where" the misrepresentations were made." Mot. 15. In doing so, GM ignores the fact that another district court—

[11] Plaintiffs do not allege breach of express warranty claims. As such, Plaintiffs need not respond to § II.B-C of GM's motion.

reviewing the very same allegations in a previous motion to dismiss *in this litigation*—concluded: "Plaintiffs allege numerous specific representations, the precise marketing materials in which those representations were contained, and the manner in which the representations allegedly misled Plaintiffs and similarly situated consumers. Plaintiffs have offered [defendant] sufficiently detailed notice of the precise misconduct Plaintiffs allege, including the what, when, where, and how of the alleged deceptive conduct. This is all that Rule 9(b) requires." *Vazquez v. Gen. Motors, LLC*, 2018 WL 447644, at *6 (S.D. Fla. Jan. 16, 2018). *See also*, *In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975, 1003 (E.D. Mich. 2017; *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (plaintiffs adequately stated a claim of fraud by omission by alleging that (1) GM was bound by a duty to disclose, (2) GM failed to disclose material facts, and (3) plaintiffs suffered damages after justifying relying on GM's failure to disclose).

Here again, the Complaint provides such detailed notice. The "what" that GM concealed is the Z06's "inability to withstand the demands of race track driving," and specifically that GM "equip[ped] the Z06 with a defective cooling system" that renders the car "unreliable" and unsafe on the track. *Id* ¶ 1. Plaintiffs then further describe the concealed defect and its materiality, alleging: "[the] Z06s are not fit for track use due to an ineffective cooling system," which "results in the

powertrain overheating when used on the track, sometimes sending the car into Limp Mode … on a race track full of speeding cars," and also causes the cars to "overheat[] in non-track driving conditions." ¶ 4.

Plaintiffs also allege "when," "where," and "how" GM misrepresented or omitted these facts. Plaintiffs set forth the substance, manner, and time[12] of GM's various misleading statements touting the Z06 as a "track-proven" car, including a statement in GM's "2015 product information brochure" specifically highlighting the car's coolant system and indicating that the car featured "larger vents [to] provide more cooling air to the engine, brakes, transmission and differential for increased track capability." ¶¶ 156-160. Plaintiffs plead that GM omitted in these statements the critical fact that the Z06 "cannot be effectively and safely used on the track due to a defective cooling system." ¶ 169. And all Plaintiffs allege reliance on GM's "track-proven" language and identify which track-ready features enticed them. See, *e.g.* ¶¶ 14-15, 20-21, 65, 239.[13]

---

[12] Exact dates of omissions are plainly not required to state a claim for fraudulent concealment. *See Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 446 (D.N.J. 2012). Here, Plaintiffs allege the years of the publication of the deceptive materials, the years the defective cars were sold, and the approximate date when GM had knowledge of the defects based on its own pre-sale testing and the consumer complaints. This is enough.

[13] As such, GM's reliance on *Feliciano v. Gen. Motors LLC*, 2016 WL 9344120, at *14–15 (S.D.N.Y. Mar. 31, 2016) and *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 546 (S.D.W. Va. 2014) is misplaced, as in those cases while

So, Plaintiffs' allegations are not "vague" and "unspecified." Mot. 16. Instead they are excerpted from GM's own materials. These allegations are clearly sufficient. *See Tershakovec v. Ford Motor Co.*, 2018 WL 3405245, at *4 (S.D. Fla. July 12, 2018) (rejecting Rule 9(b) challenge where plaintiffs plead that they reviewed print and online advertisements regarding track performance, identified marketing materials showing vehicles on tracks, and relied on these materials).

GM's cases on puffery miss the mark.[14] In *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 2007 WL 2421480, at *9 (E.D. Mich. Aug. 24, 2007), the sole misrepresentation at issue was Ford's claim that it "is committed to putting the safest vehicles on the road." Likewise, in *Ram Int'l Inc. v. ADT Sec. Servs., Inc.*, 2011 WL 5244936, at *6 (E.D. Mich. Nov. 3, 2011),

Plaintiffs did not identify specific advertisements, what, when, where and how elements at all.

[14] And the other cases upon which GM relies are inapposite. In *Williams v. Scottrade Inc.*, 2006 WL 2077588, at *7, the plaintiff alleged only that general misrepresentations were contained in "advertisements, marketing materials, and sales messages" and on Scottrade's website, but did not quote the misrepresentations themselves. In *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2009 WL 937256, at *7 (N.D. Ill. Apr. 6, 2009), plaintiffs pleaded generally that they saw and relied on advertising for the *entire line* of Craftsman tools, but failed to indicate which advertisement they saw for the particular tool they purchased. Here, Plaintiffs have provided detailed factual allegations specifically related to the 2015-2017 Corvette Z06s, and not the entire GM or Corvette line of vehicles. And, finally, GM inexplicably relies on *Seaton v. TripAdvisor LLC*, 728 F.3d 592 (6th Cir. 2013), a defamation case regarding defendant's commentary about plaintiffs' own property, which shares no causes of action or facts even remotely similar to this case.

the plaintiffs alleged only that the security services were "reliable" and "efficient." But Plaintiffs here allege that GM made specific misrepresentations as to particular features of their vehicles in describing the Corvette Z06s as "track-proven" and "track-capable"—while omitting that the Corvette Z06s would enter Limp Mode in less than 15 minutes on track. These terms are much more specific and measureable than those at issue in *In re Ford* or *Ram.*

### B. Plaintiffs have properly plead that GM had a duty to disclose.

#### 1. Plaintiffs plead that GM knew of the overheating defects.

The Complaint alleges that GM knew about the overheating issue from at least February 22, 2015, when Corvette's Chief Engineer Tadge Juechter acknowledged and addressed it. As alleged, he tried to explain that the Z06 was designed to reach thermal limitations more quickly and that mitigating such manifestations would result in "a lot of cooling hardware" that would "drive[] mass up" leading to a "huge impact on appearance."[15] ¶ 180.

It is also plausible to infer from Plaintiffs' allegations that GM had prior knowledge of the defects during the design phase and pre-release testing. *See, FCA US LLC Monostable Elec. Gearshift Litig* at 1002. This is because Plaintiffs' Complaint cites to GM's *own* representations that GM had "tested" the Z06 "production car" thoroughly on tracks for track speed, acceleration and breaking

[15] This statement predates the sale of *all* of Plaintiffs vehicles, except for Plaintiffs Lawrence and Gunes, who purchased their cars in 2014.

capabilities prior to 2015. ¶¶156, 161. As a result, GM discovered the cars could do "Quarter-mile times of 10.95 seconds at 127 mph with the eight-speed and 11.2 seconds at 127 mph with the seven speed transmission" and published these results in its 2015 vehicle information kit.[16] ¶156. From this level of specific testing, GM knew or should have known about the defect, which Plaintiffs allege is obvious in a single track session. ¶ 169.

GM's citations to *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 742 (E.D. Mich. 2017) and *Stewart v. Electrolux Home Prods., Inc.*, 2018 WL 1784273, at *9 (E.D. Cal. Apr. 13, 2018), are unavailing as there plaintiffs plead general internal testing. The *Beck* plaintiffs also "failed to suggest how this information could have informed the defendant of the alleged defect at the time of sale." *Beck*, at 742. Similarly, in *Stewart*, the court deemed allegations of "after-market" generic testing as insufficient, refusing to adopt a "presumption of knowledge on the part of any large manufacturer of any alleged defect in its product line" simply on account of "general allegations" about "internal testing." *Id.* at *9. These inadequacies are not present here.

[16] Car companies typically start selling the next model year cars halfway through the year before, and obviously prepare advertisements before the sales period begins. As such it is plausible to assume on a Rule 12 motion that the information published for a 2015 model year car was collected by GM in the first half of 2014 or earlier.

And finally, GM's cases regarding consumer complaints are distinguishable. Mot. 19-20. Unlike the plaintiffs in these cases, who failed to allege that the defendant monitored or responded to the online complaints, Plaintiffs allege GM's monitoring of third party websites. ¶179. As such, Plaintiffs sufficiently link early consumer complaints to GM's conduct to establish knowledge.

**2. Plaintiffs allege that GM had a duty to disclose under state law.**

GM incorrectly asserts that courts applying Illinois, Michigan, Missouri, Nevada, New York, Ohio, Pennsylvania, South Carolina, Tennessee, and Virginia law do not recognize a duty to disclose under these circumstances. Mot. 21-22.

Under Illinois law a plaintiff may "establish a duty to speak for fraudulent concealment purposes in situations where: (i) a defendant's acts contribute to plaintiff's misapprehension of a material fact and defendant fails to correct it, or (ii) the defendant's silence is accompanied by deceptive conduct. *In re Gen. Motors LLC Ignition Switch Litig*., 257 F. Supp. 3d 372, 414 (S.D.N.Y. 2017). Further, courts applying Illinois law have explained that a car manufacturer owes a duty to speak to consumers regarding safety defects. *See, In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *20 (D.N.J. May 8, 2017); *In re Takata Airbag Prods. Liab. Litig.*, 2017 WL 2406711, at *5 (S.D. Fla. June 1, 2017).

A duty to disclose safety defects also exists under Ohio, South Carolina and Tennessee law, which applies here because Plaintiffs allege the safety issues of the

Z06 defects, ¶¶169-172, describe the unnerving experiences due to these defects, ¶¶ 17, 23, 61,133 and allege that GM failed to disclose the risks associated with the defect, *e.g.* ¶¶ 220, 224.[17] See *In re Takata Airbags Prods. Liability Litig.*, No. 15-md-2599, slip op. at 13-14 (S.D. Fla. Sept. 21, 2016) ("Toyota had a duty to disclose additional facts about the safety of its vehicles under South Carolina law"); *In re Takata Airbags Prods. Liability Litig.*, No. 15-md-2599, slip op. at 11, 15, 21-22 & 31 (S.D. Fla. Oct. 14, 2016) (permitting fraudulent concealment claims in Ohio based on duty to disclose safety defects).

As for Tennessee, GM ignores the settled law that *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557 (6th Cir. 2003) does not apply to a dispute between a consumer and a seller. *See, Bearden v. Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 941 (M.D. Tenn. 2010). Instead, Tennessee law requires a seller to disclose: (1) "enough information to prevent its statements from being misleading,"; (2) "any condition or defect that it knows or should know about that renders the product defective or dangerous;" and (3) "basic, material information if it knows that the buyer is about to act without knowledge of the information and is without reasonable means to acquire the information itself." *Id.*

---

[17] In *Bellinger v. Hewlett Packard Co.*, 2002-Ohio-1643 plaintiffs did not specifically plead safety defects, as Plaintiffs do here. And, GM's South Carolina case, *Jimenez v. DaimlerChrysler Corp*., 269 F.3d 439, 447–48 (4th Cir. 2001) is outdated, as more recent decisions have applied a broader duty to disclose obligation. *See*, *In re Takata* (Sept. 21, 2016) and *Fisher v. Pelstring*, 817 F. Supp. 2d 791, 823 (D.S.C. 2011).

And finally, GM's own cases confirm that courts applying Missouri, Nevada, New York, Pennsylvania and Virginia law have identified a duty to disclose when one party has superior knowledge. In *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. 1997), for example, the court found that a duty to disclose exists when "one party has superior knowledge or information not within the fair and reasonable reach of the other party."[18] And while the court in *Zwiercan v. Gen. Motors Corp.*, 2003 WL 1848571, at *2 (Pa. Com. Pl. Mar. 18, 2003) held that "superior knowledge" is limited to "those defects which are likely to cause significant bodily harm", it still recognized the exception.[19] In *Burch v. Whirlpool*, 2017 WL 7370988 (W.D. Mich. Sept 28, 2017), the court stated: "Virginia law require[s] [..] that the remote seller knew or had reason to know that plaintiff would rely an affirmative misrepresentation it made."[20] And Michigan law also identifies a duty arising from

---

[18] See also, *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 236 (S.D.N.Y. 2015)("a seller in an arm's-length transaction has a duty to disclose essential facts if they have superior knowledge of those facts and the buyer could not discover them through ordinary diligence"); *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 110 (1998) ("a duty to disclose may arise from "the existence of material facts peculiarly within the knowledge of the party sought to be charged and not within the fair and reasonable reach of the other party.")

[19] GM nitpicks that Plaintiff Nakel did not use the words "life-threatening." But, *Zwiercan* is clear that there is a duty to disclose defects likely to cause bodily harm. Plaintiff Nakel also pleads serious safety implications. *See, e.g.* ¶¶169-172.

[20] See also, *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *39 (S.D.N.Y. July 15, 2016) (explaining that whether a duty to disclose is

superior knowledge. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *19 (D.N.J. May 8, 2017).

Here, Plaintiffs allege GM owed "a duty to disclose" the true performance, and reliability of the Z06s based on GM's "superior" and "exclusive" knowledge that the Z06s "did not perform as advertised." *See, e.g.* ¶¶ 377, 826. Plaintiffs state that the information concealed was the inevitable "heating of [the] powertrain system," due to lack of an effective transmission cooling system. *E.g.*, ¶¶ 170-172. Plaintiffs also allege that "GM concealed the fact that the only way for Z06s to become 'track-proven' as advertised [wa]s for GM owners to buy rear differential and transmission coolers at their own expense." ¶ 244. Plaintiffs explain that GM had gained this superior knowledge through "testing Z06s on the track prior to introduction to the market"(¶¶ 7, 156-161, 176), its own halt in production, and attempt to remediate the overheating issue on the newer models. ¶¶ 177-191. Further, Plaintiffs "had no way of knowing that GM's representations were false," "did not, and could not, unravel GM's deception," and, so, "reasonably relied upon GM's deception." ¶ 251. Hence, Plaintiffs' claims must be sustained.

---

arises under Virginia law turns on whether the fact is material and the defendant has superior knowledge and knows the plaintiff is assuming that the fact does not exist; or (2) if the defendant takes actions which divert the plaintiff from making prudent investigations (e.g., by making a partial disclosure)).

### C. Plaintiffs Manukyan (CA), Kanas (NH), and Nakel (PA) plead injury.

GM contends that Plaintiffs Kanas, Manukyan and Nakel cannot establish injury as a matter of law because they "do not allege that their vehicles ever experienced limp mode." Mot. 22. This argument fails for three reasons. First, Plaintiffs Kanas, Nakel and Manukyan all allege that they were injured by GM's conduct by overpaying for their vehicles and not receiving the benefit of their bargain. ¶¶ 24, 103, 123. The inquiry should end here.[21]

Second, manifestation is *not* a required element for an implied warranty claim under California law.[22] Plaintiffs need only demonstrate that the product "contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product." *Hicks v. Kaufman & Broad Home Corp*. 107 Cal.Rptr.2d 761, 768 (Cal. 2001). Here, Mr. Manukyan alleges the defect and its likelihood to cause Limp Mode.[23] ¶¶169-172. This is sufficient.

---

[21] *In re Duramax Diesel Litig*., 298 F. Supp. 3d 1037, 1052 (E.D. Mich. 2018) ("pa[ying] for a product which did not operate in the way [plaintiffs] believed" is "cognizable injury").

[22] GM fails to establish that manifestation is required under New Hampshire or Pennsylvania law, as its one case applies Michigan, Illinois and Massachusetts law. *Miller v. Gen. Motors, LLC*, 2018 WL 2740240 (E.D. Mich. Jun. 7, 2018).

[23] Plaintiff Manukyan is not required to plead a manifestation under California law, but has plead a loss of engine power. ¶ 23. GM curiously first acknowledges that Mr. Manukyan has "a loss of engine power", Mot. 9, n.9, then later argues he has not experienced a defect manifestation, Mot. 22.

Third, GM is simply incorrect that Plaintiffs Kanas and Nakel have not alleged a manifestation. Plaintiffs explain that overheating, in of itself, is a manifestation of the defects at issue in this litigation and results in damage to the vehicle's engine, clutch, and other parts. ¶¶ 6, 170. Plaintiff Kanas pleads that he experienced his car "overheating on a hot day when he was in traffic" (¶ 102) and Plaintiff Navel states his vehicle "heats up very quickly" and that he cannot "drive it the way he wants," ¶123 *See also, In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975, 1016 (E.D. Mich. 2017) (plaintiffs' allegations detailing problems shifting the car into an intended gear was enough to state a claim for manifestation of a rollaway incident under Pennsylvania law). Information beyond this is a matter for discovery.

## IV. PLAINTIFFS PROPERLY PLEAD STATUTORY FRAUD CLAIMS

### A. Plaintiffs plead all required elements under the different consumer protection statutes.

As discussed above, GM "heavily advertised [the Z06] as track-capable" and "track-proven" and "aggressively market[ed] the Z06 to track enthusiasts, (who relied on these claims)" (¶ 150), despite that the car has a defective cooling system," which "results in the powertrain overheating when used on the track, sometimes sending the car into Limp Mode . . . on a race track full of speeding cars," and causes the car to "overheat[] in non-track driving conditions," (¶ 4). As such, Plaintiffs have overpaid for their Z06s (*e.g.*¶ 14) and would have made a

different purchasing decision 'but for' GM's fraud (*e.g*. ¶ 380). Nothing more is required under the different consumer protection statutes. *In re FCA US LLC Monostable Elec. Gearshift Litig*., 280 F. Supp. 3d 975, 1000, 1003 (E.D. Mich. 2017).

GM is incorrect to attack that Plaintiffs do not specifically plead reliance. (Mot. 24-5). Here Plaintiffs plead their pre-purchase research (*e.g.* ¶65.), and that they have relied upon GM's advertising, (*e.g.*¶ *239*). And the Complaint excerpts specific examples of GM's advertisements (¶¶ 3, 156-166). Plaintiffs thus plead reliance. *See Tershakovec* at *4 (dismissing argument that under several consumer protection statutes that each plaintiff is required to plead a specific advertisement when plaintiffs pleads the type of pre-purchase research undertaken, and the complaint provides specific examples of marketing materials as well as allegations that plaintiffs relied on these materials).

Pleading proximate cause requires only that plaintiffs "allege that they would have made a different purchasing decision but for [Defendant's] misrepresentations." *In re FCA US LLC Monostable Elec. Gearshift Litig*., 280 F. Supp. 3d 975, 1001 (E.D. Mich. 2017). Clearly, Plaintiffs allege that had GM not marketed the Z06s as a track capable, track enthusiasts would not have purchased them. *See*. *e.g.* ¶¶ 380, 810. This is enough for the pleading stage, even under Rule 9(b). And GM's cases are consistent with this argument, as in both *Rosipko v. FCA*

*US LLC*, 2015 WL 8007649 (E.D. Mich.) at *3 and *Janney v. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal 2013) there were no specific statements identified *at all* in the complaints at issue. In contrast, Plaintiffs copy GM's statements in the Complaint and explain why they are fraudulent. See, ¶¶ 3, 156-167, and § IV.A., *supra*.

**B. Plaintiffs have adequately alleged GM's knowledge of a defect.**

As explained above in § III.B.2, Plaintiffs provide more than enough detail to plausibly allege that GM knew about the defect before the time of sale.

**C. GM's state-specific arguments have no merit.**

**1. Consumer class actions are appropriate under Georgia, South Carolina, and Tennessee law.**

GM argues that the consumer protection statutes in Georgia, South Carolina, and Tennessee prohibit class actions. Mot. 25-26. That argument is premature, as the viability of Plaintiffs' class action allegations is not at issue at this stage of the pleadings.[24] But in any event, GM's argument also ignores settled law that class actions may continue in those states as "so long as applying Rule 23 does not "abridge, enlarge or modify any substantive right of the GFBPA." *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1292 (N.D. Ga. 2018); *see also Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)

[24] *See In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, 2018 WL 3973153, at *58 (D. Kan. Aug. 20, 2018).

(holding that Rule 23 governed plaintiffs' consumer protection act claims under Alabama, South Carolina, and Tennessee law despite those statutes' restrictions on class actions); *Persad v. Ford Motor Co.*, 2018 WL 3428690, at *8 (E.D. Mich. July 16, 2018) (denying Ford's motion to dismiss plaintiff's class action claim under the GFBPA); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *24 (D. N.J. May 8, 2017) (denying motions to dismiss Colorado, Georgia, and South Carolina consumer protection class action claims). As such, Plaintiffs can appropriately pursue class actions under these statutes.

**2. Colorado's consumer protection statute does not prohibit class claims for money damages.**

Citing one unpublished case from California, GM argues that Colorado's consumer protection statute bars class claims for actual damages. In doing so, GM ignores the holding in *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 874 (E.D. Mich. 2009), where this Court concludes "that the Colorado Consumer Protection Act does not preclude class actions for actual damages." *Id.* Therefore, Plaintiffs' claim for damages under this statute are appropriate.

**3. Michigan does not exempt motor vehicle sales from the MCPA.**

Courts routinely reject GM's argument and allow MCPA claims for automotive defects to proceed. Mot. 26. *See, e.g., Hoff v. Mercedes-Benz USA, LLC*, Case No. 04 836 NZ, 2005 WL 3723201, at *8 (Mich. Cir. Ct., Washtenaw County, Dec. 30, 2005) ("the specific act of selling an automobile or

manufacturing an automobile is not regulated and therefore that act is not excluded from the [MCPA]"); *see also In re Duramax Diesel Litig.*, 2018 WL 3647047, at *7 (E.D. Mich. Aug. 1, 2018); *In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 420-24 (S.D.N.Y. 2017).[25]

### 4. Plaintiff correctly alleges injunctive relief under Georgia law.

Plaintiffs plead that GM continues to install defective cooling systems in new Z06s and has failed to adequately fix or replace the currently cooling systems installed in existing Z06s. ¶¶ 8, 402. Hence, GM's argument here fails as Plaintiffs have alleged ongoing and future harm. *Amin*, 301 F. Supp. 3d at 1295.

### 5. Plaintiffs plead viable claims under the OCSPA

While the Ohio Consumer Sales Practices Act provides for a two-year statute of limitations, GM omits from its argument that Ohio recognizes that the doctrine of fraudulent concealment can toll this time limitation. *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 890-91 (N.D. Cal. 2018). Plaintiffs have sufficiently alleged fraudulent concealment here. *See* ¶¶ 750-760 § III, *supra*. And as evidenced by the cases in the Complaint, (see, ¶ 757), GM was sufficiently on

[25] GM's cases are inapposite. *Jimenez v. Ford Motor Credit Co.*, 2015 WL 9318913 at *5-7 (Mich. Ct. App. Dec. 22, 2015), and *Chaudoin v. Thor Motor Coach, Inc.*, 2017 WL 3485803 at *24 (E.D. Mich. Aug. 15, 2017), pertain to the Motor Vehicle Code, which governs certain conduct by dealers, not manufacturers. And the holding in *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018 (E.D. Mich. Oct. 21, 2016), was specifically limited to Toyota's advertising of the Prius and its miles-per-gallon estimates. *Id.* at *3.

notice that its conduct violated the OCSPA. The cases at ¶ 757 are substantially similar to the facts and laws plead here, plus other federal courts have agreed that automotive defect class actions involving omissions and misrepresentations regarding a defective product are permissible under the OCSPA. *See Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 572 (D. N.J. 2012). Thus Plaintiff Bleich's claim may continue.

**6. Claims for injunctive relief under California's UCL and FAL are expressly cumulative to other legal remedies.**

GM contends that plaintiffs cannot seek injunctive relief under the UCL and FAL unless they show the absence of an adequate remedy at law. Mot. 28. But California's consumer protection statutes explicitly permit remedies "cumulative to each other and to the remedies or penalties available under all other laws of this state." Cal. Bus. & Prof. Code § 17205; *see also Safransky v. Fossil Grp.*, No. 17-cv-1865-MMA, 2018 WL 1726620, at *14 (S.D. Cal. Apr. 9, 2018).[26]

Defendants' cases do not discuss these statutory provisions permitting cumulative remedies.[27] Moreover, they do not account for the fact that "plaintiffs

[26] *See also Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018) (collecting cases); *Luong v. Subaru of Am., Inc.*, No. 17-CV-03160-YGR, 2018 WL 2047646, at *7 n.6 (N.D. Cal. May 2, 2018).

[27] *See* Mot. 28-29, *citing Philips v. Ford Motor Co.*, 14-cv-02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015); Zapata *Fonseca v. Goya Foods Inc.*, 16-cv-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016); *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017).

routinely plead fraud, UCL, and CLRA claims based on similar allegations."[28] And if a plaintiff "ultimately prevails on her claims," she will still need to show that injunctive relief "is the only way to remedy a specific type of injury suffered by herself or the class." *Safransky*, 2018 WL 1726620, at *15.

Further, in a case that GM relies on, the Court acknowledged that a plaintiff "may be able to distinguish his UCL, FAL, and unjust enrichment claims by demonstrating that they are not rooted in a common factual predicate as [the p]laintiff's other causes of action." *Zapata*, 2016 WL 4698942, at *8. Likewise, here plaintiffs' UCL and FAL claims are rooted in GM's pre-sale material omissions, *e.g.* ¶¶ 156-161, unlike the warranty claims that do not arise until the time of the sale. And the more onerous factual showing on the fraud claim is distinct from the statutory claims as well.[29]

**7. Transactions under the New York statute encompass deception by the defendant.**

GM construes "transaction" more narrowly than the applicable cases in arguing that plaintiff Lawrence does not allege a transaction in New York because

---

[28] *Flores v. Southcoast Auto. Liquidators, Inc.*, 226 Cal. Rptr. 3d 12, 19 (Cal. 2017). *See also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (reversing dismissal of common law fraud, CLRA, FAL, and UCL causes of action based on similar allegations).

[29] 207 P.3d 20, 29 (Cal. 2009) (a common law fraud "must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages," while "[n]one of these elements are required to state a claim for injunctive relief under the UCL").

he purchased and leased his vehicles in Maryland and Michigan. Mot. 29. But the very case on which GM relies explains that the statute addresses "commercial misconduct occurring within New York." *Goshen v. Mut. Life Ins. Co. of N. Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002). So "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York."[30]

Indeed, a subsequent case holds that at least "*some part* of the underlying transaction must occur in New York State."[31] So although the "seller receives orders for [the product] in, and ships its product from, the State of Maine," the "New York plaintiff who allegedly was deceived in New York states a cognizable cause of action" under § 349 and 350.[32] As a resident of New York, plaintiff was deceived by GM's deceptive advertising in the state, such that his claims are likewise cognizable.

**8. Plaintiffs Manukyan (CA), Kanas (NH), and Nakel (PA) allege sufficient injury.**

For the reasons set forth in § III.C, these plaintiffs' vehicles need not have

---

[30] *Id*. (transaction did not take place in New York, though the marketing campaign was conceived there, when the plaintiff received the marketing information in Florida and purchased his policy in Florida).

[31] *Mountz v. Glob. Vision Prods., Inc.*, 770 N.Y.S.2d 603, 608 (N.Y. Sup. Ct. 2003) (emphasis added).

[32] *Id.* at 605, 608. *See also Meachum v. Outdoor World Corp.*, 652 N.Y.S.2d 749, 750 (N.Y. 1997); *Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 688 (S.D.N.Y. 2010) ("the essential act that must have transpired within the boundaries of the state to maintain a viable suit under GBL § 349 [is] that the deception they allege having experienced occurred in New York").

experienced a Limp Mode manifestation to state viable claims for economic loss. And as explained in the same section, all three Plaintiffs plead overheating events.

## V. PLAINTIFFS PLEAD VIABLE UNJUST ENRICHMENT CLAIMS.

GM contends that plaintiffs' unjust enrichment claims fail because plaintiffs "allege the existence of a written warranty." Mot. 29. But to preclude an unjust enrichment claim there must be "an express contract on the same subject matter." *E.g.*, *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016). And here the unjust enrichment claims arise from GM's pre-sale misrepresentations and omissions, ¶¶ 156-161, whereas the warranty claims do not arise until the time of sale. So, in *Glenn v. Hyundai,* for example, the district court denied the defendant car manufacturer's motion to dismiss unjust enrichment claims arising from an undisclosed shattering-sunroof defect, because "any fraudulent concealment before the contract is not within the scope of the warranty." 2016 WL 7507766, at *6 (C.D. Cal. Nov. 21, 2016).

GM relatedly contends that unjust enrichment is unavailable when plaintiffs have an adequate legal remedy. Mot. 30. But this Court has held that, "under FRCP 8(e)(2), a party may plead a contract claim and an alternative claim for unjust enrichment."[33] And, as stated by the district court in *Persad v. Ford Motor*

[33] *Brewart v. Travelers Cas. Ins. Co. of Am.*, No. 13-CV-11657, 2015 WL 5604439, at *6 n.1 (E.D. Mich. Aug. 10, 2015) (J. Patti), *report and recommendation adopted*, No. 13-CV-11657, 2015 WL 5589915 (E.D. Mich. Sept. 21, 2015) (J. Roberts).

*Co.*, this "is especially true" where the defendant "denies the applicability of any warranty in its motion to dismiss and presumably will continue to do so as this litigation progresses"[34]—as here. *See* Mot. 11-13. As stated by the Sixth Circuit, "[l]awyers cannot preordain which claims will carry the day and which will be treated less favorably," so "[g]ood lawyering as well as ethical compliance often requires lawyers to plead in the alternative."[35]

Finally, GM asserts that plaintiffs' claims for unjust enrichment fail because GM is a remote manufacturer. Mot. 31. This Court has stated that it is "mindful of the split in the Eastern District," but its "reading of Michigan law is that direct contact is required to maintain a claim for unjust enrichment."[36] As to the other states, however, GM's argument fails, because the "critical inquiry is not whether the benefit is conferred directly on the defendant."[37] Rather, it is "whether the plaintiff can establish that the relationship between his detriment and the

---

[34] No. 17-12599, 2018 WL 3428690, at *6 (E.D. Mich. July 16, 2018); *see also Tershakovec*, 2018 WL 3405245, at *14.

[35] *Jordan v. City of Cleveland*, 464 F.3d 584, 604 (6th Cir. 2006); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) (permitting unjust enrichment claim to be pled in the alternative); *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) (same).

[36] *Leibovic v. United Shore Mortg., LLC*, No. 15-12639, 2016 WL 6395954, at *6 (E.D. Mich. Oct. 28, 2016) (J. Roberts).

[37] *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 864 (E.D. Mich. 2014) (*In re Auto Parts II*) (rejecting defendants' assertion that claims under Kansas and New York law failed "because a plaintiff must allege that it directly conferred some advantage on the defendant").

defendant's benefit flow from the challenged conduct."[38] Here, the challenged conduct, *i.e.*, GM's pre-sale misrepresentations and omissions regarding the "Limp Mode" defect, caused plaintiffs to purchase and pay more for vehicles than they would have otherwise—and this was to GM's ultimate benefit. Plaintiffs properly state their unjust enrichment claims.

## VI. PLAINTIFFS NATIONAWIDE MMWA AND NEW YORK CLASS ALLEGATIONS SHOULD NOT BE STRICKEN.

### A. It is premature to rule on the manageability of multi-state sub-class groupings reflecting the variations in underlying state warranty law.

The Court should deny GM's motion to strike the nationwide MMWA class. "[I]t is in fact rare to do so in advance of a motion for class certification." *Grodzitsky v. Am. Honda Motor Co., Inc.*, 2013 WL 690822, at *10 (C.D. Cal. Feb. 19, 2013). Rather, "the 'rigorous analysis' contemplated by the Supreme Court's recent class certification rulings requires discovery and development of the

---

[38] *Id. See also In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 929-30 (E.D. Pa. 2012) (stating that "Kansas law does not mandate the conferral of a direct benefit under an unjust enrichment" and distinguishing *Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269, 273 (10th Cir. 2008)); *In re Canon Cameras Litig.*, No. 05 Civ. 7233(JSR), 2006 WL 1751245, at *2 (S.D.N.Y. Jun. 23, 2006) (holding that a conferral of direct benefit is not required as long as the relationship between the parties is not "too attenuated," and further holding that the issue "is a question of fact not properly resolved on a motion to dismiss"); *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) ("a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment"); *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 853 (N.D. Ill. 2006) ("an unjust enrichment claim may be premised on an indirect conferral of benefits" under Illinois law), *citing* Restat. 1st of Restitution, § 1 cmt. b. (benefit is construed broadly to include "any form of advantage"). GM cites only IL, KA, MI, and NY cases on this point.

record." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014), *citing Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 464-65 (2013). So courts routinely deny motions to strike class allegations. *E.g., In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, No. 14-MD-2508, 2015 WL 5166014, at *42 (E.D. Tenn. June 24, 2015). This Court should too.

GM relies on *Pilgrim v. Universal Health* in support of its argument that "the asserted class is facially improper and no amount of discovery would change the central defect." Mot. 32-33, *citing* 660 F.3d 943, 948 (6th Cir. 2011). But in *Pilgrim*, the Sixth Circuit pointedly declined to decide whether "a nationwide class covering claims governed by the laws of the various States could overcome" the variation in legal issues "by demonstrating considerable factual overlap,"[39] because *Pilgrim* was "not such a case." 660 F.3d at 947. Instead, the "defendants' program did not operate the same way in every State," such that "the plaintiffs would need to make particularized showings in different parts of the country." *Id.* at 947-48.

To be sure, the Sixth Circuit later stated in *Rikos v. Procter & Gamble* that *Pilgrim's* holding "actually rested on th[is] fact." 799 F.3d 497, 521 (6th Cir. 2015). And it distinguished the case before it as "involve[ing] one product with a

---

[39] 660 F.3d at 947. *See also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("We express no view whether on remand it would be correct … to certify a class with members more broadly but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law.").

uniform marketing scheme." *Id.* (affirming certification of five state classes). Likewise, here plaintiffs allege uniform misconduct across the country.

GM's other cases are also inapposite. *In re Am. Med. Sys., Inc.,* involved negligence claims. 75 F.3d 1069 (6th Cir.1996). *Oom* and *Boyer* both involved fail-safe classes, "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Oom v. Michaels Companies, Inc.*, No. 16-CV-257, 2017 WL 3048540, at *4 (W.D. Mich. July 19, 2017); *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015). And in *Oom* "the plaintiffs did not allege a common scheme relative to all members of the class." 2017 WL 3048540, at * 5.

In short, because plaintiffs allege common facts, whether they predominate should await a more developed record, particularly where multi-state sub-class groupings can be used to manage the variations in underlying state warranty law.

### B. Plaintiffs' standing to represent absent nationwide class members should be determined at class certification.

GM argues that Plaintiffs lack standing to assert claims under the laws of states in which they do not reside. But the case on which it relies recognizes that "[f]ederal courts are split on this issue" and "[w]ithin this district, courts have issued conflicting opinions on the subject." *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 654 (E.D. Mich. 2011). In *In re Auto. Parts*, for example, the court concluded that "once a named plaintiff's standing has been established, his

capacity to seek relief for absent members" is "determined under Rule 23."[40]

In coming to this conclusion, *In re Auto Parts I* relied on the Supreme Court's decision in *Amchem Prod., Inc. v. Windsor* where the Court "endorsed postponing the standing determination until after a class certification ruling because the certification issues are 'logically antecedent to Article III concerns.'" 2013 WL 2456612, at *9, *quoting* 521 U.S. 591, 612 (1997). And *In re Auto Parts I* also relied on a Sixth Circuit decision that applied a similar rationale in an ERISA class action lawsuit. 2013 WL 2456612, at *10, *citing Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998). In *Fallick*, the plaintiff sought to represent members of several of the defendant's benefit plans, including plans to which the plaintiff did not belong. 162 F.3d at 421. The district court dismissed those allegations, and the Sixth Circuit reversed. *Id*. at 422-23. Because the potential class representative was able to "demonstrate individual standing vis-a-vis the defendant," his ability to represent others with similar claims was for Rule 23. *Id*. at 423.

The district court in *Hovering v. Transnation Title Ins. Co.* also relied on *Amchem* and *Fallick*, finding "no reason not to apply the same rationale."[41] Because the Michigan plaintiff would need to establish that his claim "is typical of

[40] No. 12-md-02311, 2013 WL 2456612, at *9-10 (E.D. Mich. June 6, 2013) (*In re Auto Parts I*) (collecting cases); *see also In re Auto Parts II*, 50 F. Supp. 3d at 851-52 (adopting earlier ruling).

[41] 545 F. Supp. 2d 662, 667 (E.D. Mich. 2008). *See also Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 588 (E.D. Mich. 2017).

those individuals whose claims arise under the laws of other states," the court held that "[t]he question whether he has standing to proceed as a class representative will be subsumed in the class certification decision." *Hovering*, 545 F. Supp. 2d at 667-68. While there are courts that have come out differently, there is now a "growing consensus" that "class certification should come first." *Kaatz v. Hyland's Inc.*, No. 16 CV 237 (VB), 2016 WL 3676697, at *4 (S.D.N.Y. July 5, 2016).

**C. Plaintiffs' standing to represent absent New York class members should also be determined at class certification.**

For the same reasons set forth in the preceding section, the standing of the current class members to represent the New York class is premature to decide now. And, alternatively, the definition of the New York class can be expanded to include those who were deceived by GM's misrepresentations and omissions in New York, regardless whether they purchased or leased their vehicle in that state, reflecting the full scope of § 349 and 350, discussed above.

Dated: September 10, 2018

HAGENS BERMAN SOBOL & SHAPIRO

By: */s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
Catherine Y.N. Gannon (*pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: catherineg@hbsslaw.com

Stuart Z. Grossman
Rachel Furst
GROSSMAN ROTH YAFFA COHEN, PA
2525 Ponce de Leon, Suite 1150
Coral Gables, FL 33134
Telephone: (888) 296-1681
Facsimile: (305) 285-1668
Email: szg@grossmanroth.com
Email: rwf@grossmanroth.com

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
THE MILLER LAW FIRM, P.C.
950 W. University Dr., Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
Email: epm@millerlawpc.com
Email: ssa@millerlawpc.com
Email: dal@millerlawpc.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MICHAEL MATANKY, et al.,<br>Plaintiffs,<br>v.<br>GENERAL MOTORS LLC,<br>Defendant. | Case No. 2:18-cv-10601<br>Hon. Victoria A. Roberts<br>Magistrate Judge Anthony P. Patti |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2018, I electronically filed the foregoing using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Steve W. Berman*
Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com