UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MATANKY, et al.,

       Plaintiffs,

v.                              Case No. 18-10601
                                  Honorable Victoria A. Roberts

GENERAL MOTORS LLC,

       Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT [ECF No. 22]

## I.    INTRODUCTION

Twenty-three individual Plaintiffs bring this putative class action against General Motors LLC ("GM") seeking to represent a nationwide class and 18 statewide classes of individuals who purchased or leased a 2015 to 2017 Chevrolet Corvette Z06.

GM moves to: (1) dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b); and, in the alternative, (2) strike Plaintiffs' nationwide and New York class allegations pursuant to Rules 12(f) and 23.

GM's motion is **GRANTED IN PART** and **DENIED IN PART** in accordance with the Table of Claims below.

*Remainder of Page Left Intentionally Blank*

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................1

       TABLE OF CONTENTS....................................................................2

II.    TABLE OF CLAIMS...........................................................................4

III.   BACKGROUND.................................................................................7

IV.    LEGAL STANDARD.........................................................................10

V.     ANALYSIS.......................................................................................11

       A.     NEW YORK CLASS ALLEGATIONS.............................................11

       B.     STATE LAW IMPLIED WARRANTY CLAIMS..................................13

              i.     Sufficiency of Plaintiffs' Allegations.......................................13

              ii.    State Law Privity Requirements.........................................16

                     a.     California Law.................................................................16

                     b.     Connecticut and Ohio Law.........................................17

                     c.     Illinois Law.................................................................18

                     d.     Nevada Law.................................................................19

       C.     MAGNUSON-MOSS WARRANTY ACT CLAIM.............................20

       D.     FRAUDULENT CONCEALMENT CLAIMS.....................................21

              i.     Plaintiffs Plead Reliance with Sufficient Particularity.................23

              ii.    Duty to Disclose – GM's Knowledge at the Time of Sale............25

                     a.     Knowledge of the Alleged Defect in the 2015-16 Z06s........26

                     b.     Knowledge of the Alleged Defect in the 2017 Model.........29

              iii.   Duty to Disclose – State-Specific Arguments..........................30

                     a.     Illinois Law.................................................................30

|     |     | b.  | Michigan Law……………………………………………………..31 |
|     |     | c.  | Missouri Law……………………………………………………32 |
|     |     | d.  | Nevada Law……………………………………………………..33 |
|     |     | e.  | Ohio Law………………………………………………………..34 |
|     |     | f.  | Pennsylvania Law……………………………………………35 |
|     |     | g.  | Virginia Law……………………………………………………36 |

iv.    Plaintiffs Sufficiently Allege Injury…………………………………37

**E.    STATE CONSUMER PROTECTION CLAIMS…………………………38**

i.    Sufficiency of Plaintiffs' Allegations…………………………………39

ii.    State-Specific Arguments…………………………………………39

a.    Georgia FBPA and Tennessee………………………………39

b.    Colorado……………………………………………………...41

c.    Michigan…………………………………………………….42

d.    Georgia UDTPA……………………………………………44

e.    Ohio…………………………………………………………47

f.    California UCL and FAL……………………………………49

g.    Failure to Allege Injury……………………………………...50

**F.    UNJUST ENRICHMENT CLAIMS…………………………………...50**

**VI.    CONCLUSION…………………………………………………………51**

| Count | Plaintiff(s) | Class | Claim | Disposition |
|-------|-------------|-------|-------|-------------|
| **II.** | | | **TABLE OF CLAIMS** | |
| 1 | All | Nationwide | Magnuson-Moss Warranty Act | Dismissed |
| 2 | Kevin Presser, Suren Manukyan, and Kyvan Shaigi-Neik | California | California Consumers Legal Remedies Act | Survives |
| 3 | | | California Unfair Competition Law | Survives |
| 4 | | | California False Advertising Law | Survives |
| 5 | | | Fraudulent Concealment | Survives |
| 6 | | | Breach of the Implied Warranty of Merchantability | Survives |
| 7 | | | Unjust Enrichment | Dismissed |
| 8 | Michael Matanky | Colorado | Colorado Consumer Protection Act | Dismissed as to Class Claim for Money Damages; Survives as to Request for Injunctive Relief |
| 9 | | | Fraudulent Concealment | Survives |
| 10 | | | Breach of the Implied Warranty of Merchantability | Survives |
| 11 | | | Unjust Enrichment | Dismissed |
| 12 | Charles Franklin and Michael Dufresne | Connecticut | Connecticut Unfair Trade Practices Act | Survives |
| 13 | | | Fraudulent Concealment | Survives |
| 14 | | | Breach of the Implied Warranty of Merchantability | Dismissed |
| 15 | | | Unjust Enrichment | Dismissed |
| 16 | Michael Vazquez and Michael Malone | Florida | Florida Unfair and Deceptive Trade Practices Act | Survives |
| 17 | Dwayne Grant | Georgia | Georgia Fair Business Practices Act | Dismissed |
| 18 | | | Georgia Uniform Deceptive Trade Practices Act | Dismissed |
| 19 | | | Fraudulent Concealment | Survives |
| 20 | | | Breach of the Implied Warranty of Merchantability | Survives |
| 21 | | | Unjust Enrichment | Dismissed |

4

| | | | | |
|---|---|---|---|---|
| 22 | Peter Jankovskis and Jonathan White | Illinois | Illinois Consumer Fraud and Deceptive Business Practices Act | Survives |
| 23 | | | Fraudulent Concealment | Survives |
| 24 | | | Breach of the Implied Warranty of Merchantability | Dismissed |
| 25 | | | Unjust Enrichment | Dismissed |
| 26 | James Zachacz | Kansas | Kansas Consumer Protection Act | Survives |
| 27 | | | Fraudulent Concealment | Survives |
| 28 | | | Breach of the Implied Warranty of Merchantability | Survives |
| 29 | | | Unjust Enrichment | Dismissed |
| 30 | Amar Alhadad | Michigan | Michigan Consumer Protection Act | Dismissed |
| 31 | | | Fraudulent Concealment | Dismissed |
| 32 | | | Breach of the Implied Warranty of Merchantability | Survives |
| 33 | | | Unjust Enrichment | Dismissed |
| 34 | Steven Closser | Missouri | Missouri Merchandising Practices Act | Survives |
| 35 | | | Fraudulent Concealment | Survives |
| 36 | | | Breach of the Implied Warranty of Merchantability | Survives |
| 37 | | | Unjust Enrichment | Dismissed |
| 38 | James DiIorio | Nevada | Nevada Deceptive Trade Practices Act | Survives |
| 39 | | | Fraudulent Concealment | Survives |
| 40 | | | Breach of the Implied Warranty of Merchantability | Survives |
| 41 | | | Unjust Enrichment | Dismissed |
| 42 | Stephen Kanas | New Hampshire | New Hampshire Consumer Protection Act | Survives |
| 43 | | | Fraudulent Concealment | Survives |
| 44 | | | Breach of the Implied Warranty of Merchantability | Survives |
| 45 | | | Unjust Enrichment | Dismissed |

| | | | | |
|---|---|---|---|---|
| 46 | David Lawrence | New York | N.Y. General Business Law – § 349 | Dismissed |
| 47 | | | N.Y. General Business Law – § 350 | Dismissed |
| 48 | | | Fraudulent Concealment | Dismissed |
| 49 | | | Breach of the Implied Warranty of Merchantability | Plaintiffs Withdraw |
| 50 | | | Unjust Enrichment | Dismissed |
| 51 | John Bleich | Ohio | Ohio Consumer Sales Practices Act | Dismissed |
| 52 | | | Fraudulent Concealment | Dismissed |
| 53 | | | Breach of the Implied Warranty of Merchantability | Dismissed |
| 54 | | | Unjust Enrichment | Dismissed |
| 55 | Brian Nakel | Pennsylvania | Pennsylvania Unfair Trade Practices and Consumer Protection Law | Survives |
| 56 | | | Fraudulent Concealment | Dismissed |
| 57 | | | Breach of the Implied Warranty of Merchantability | Survives |
| 58 | | | Unjust Enrichment | Dismissed |
| 59 | John Herold | South Carolina | S.C. Unfair Trade Practices Act | Dismissed |
| 60 | | | Fraudulent Concealment | Dismissed |
| 61 | | | Breach of the Implied Warranty of Merchantability | Survives |
| 62 | | | Unjust Enrichment | Dismissed |
| 63 | Kaan Gunes | Tennessee | Tennessee Consumer Protection Act of 1977 | Dismissed |
| 64 | | | Fraudulent Concealment | Survives |
| 65 | | | Breach of the Implied Warranty of Merchantability | Plaintiffs Withdraw |
| 66 | | | Unjust Enrichment | Dismissed |
| 67 | Joscelyn Smith | Virginia | Virginia Consumer Protection Act | Survives |
| 68 | | | Fraudulent Concealment | Survives |
| 69 | | | Breach of the Implied Warranty of Merchantability | Plaintiffs Withdraw |
| 70 | | | Unjust Enrichment | Dismissed |
| 71 | Joseph Minarik | Washington | Washington Consumer Protection Act | Survives |
| 72 | | | Fraudulent Concealment | Survives |
| 73 | | | Breach of the Implied Warranty of Merchantability | Plaintiffs Withdraw |
| 74 | | | Unjust Enrichment | Dismissed |

## III.    BACKGROUND

Plaintiffs purchased or leased a 2015-2017 Z06 from a GM-authorized dealership.  As self-described "track enthusiasts," Plaintiffs say they purchased their Z06 for use on both public roadways and specialized closed race tracks.

Plaintiffs allege that GM marketed and sold the Z06 for use on race tracks – as evidenced by GM's information kits and brochures, the car's track-focused features, owner manuals for the car, press kits, and GM-sponsored track events – and that Plaintiffs relied on this marketing in deciding to purchase their cars.

The 2015 vehicle information kit, for example, described the benefits of a "track-focused" performance package as "faster lap times," including "[q]uarter-mile times of 10.95 seconds at 127 mph with the eight-speed and 11.2 seconds at 127 mph with the seven-speed transmission."  The 2015 product information brochure noted that the Z06 was "developed to push the envelope of performance on the street and the track."  The brochure likewise lauded the improved cooling components on the car, and specifically proclaimed that the Z06's design provided "increased track capability" – representations that Plaintiffs allege were intended to assure consumers that the Z06 could handle the high temperatures associated with track driving.  In numerous promotional materials, GM described the car as "track-proven" or "race-proven."

Consistent with the marketing materials, GM equipped the Z06 with features that a person would associate with a car designed for track racing, including a specific "Track App" software component and a heads-up tachometer display used for racing. Additionally, the Z06 owner manuals contemplated track use – offering detailed instructions on track driving and describing a "Competitive Driving Mode" for "use at a

closed course race track."  Meanwhile, GM sponsored track events featuring the Z06 and promoted a "Corvette Owner's School" where owners were encouraged to develop their track skills.

Despite GM's numerous representations that the Z06 was designed for track use and "track-proven," Plaintiffs say a design defect causes the Z06 to overheat unexpectedly and makes the car unsuitable for track use.  Plaintiffs allege that due to a defective cooling system, "the engine will overheat if it operates on the track during a typical track session, which causes the Z06 to go into "Limp Mode" to prevent permanent damage, or causes the driver to see the overheat gauge and pit the car before it goes into Limp Mode."  When the car enters Limp Mode, Plaintiffs say it can "immediately go from well over 100 mph to a substantially lower speed and lose power." Plaintiffs claim that it is inherently dangerous for the car to overheat, lose power, and/or enter Limp Mode either at the track or on public roads; loss of engine power and sudden deceleration increases the risk of collision.

According to Plaintiffs, GM knew of the defect but continued to market the cars for track driving.  Plaintiffs allege that GM conducted extensive track testing of the Z06, which would have revealed the alleged defect.  Plaintiffs say a February 2015 statement by Corvette's chief engineer, Tadge Juechter, demonstrates GM's awareness of the problem.  In the statement, Juechter acknowledges that a Z06 with an automatic transmission reaches "thermal limitations . . . more quickly," and advises customers who "plan[] to run extended track-day sessions at 'professional' speeds . . . to go with the manual transmission, or to paddle shift the automatic and select higher gears when conditions warrant it."  In addressing why the Z06 did not have higher temperature

limitations, Juechter said that GM has "used the 'pro driver at 86 degrees' criteria for generations of Corvettes and for the vast majority of customers, it has resulted in excellent performance for their usage."

Plaintiffs also offer examples of online consumer complaints regarding the overheating issue, and they allege that GM monitors the online forums where complaints were lodged. The earliest consumer complaint Plaintiffs cite was published May 17, 2015. Finally, Plaintiffs allege that GM effectively admitted to the defect when it stopped production of the Z06 in 2016 due to the overheating issue and modified the cooling system in the 2017 model.

This action was one of five parallel proceedings filed by the same plaintiffs' counsel against GM in different federal courts. The other cases were transferred to this district and reassigned to this Court. Following reassignment, the Court entered a stipulated order consolidating the cases and requiring Plaintiffs to file a consolidated complaint. Plaintiffs filed their consolidated class action complaint on May 11, 2018.

Plaintiffs seek to represent a nationwide class and – for 18 states – statewide classes of purchasers and lessees of a 2015-2017 Z06: California, Colorado, Connecticut, Florida, Georgia, Illinois, Kansas, Michigan, Missouri, Nevada, New Hampshire, New York, Ohio, Pennsylvania, South Carolina, Tennessee, Virginia, and Washington.

Plaintiffs bring a claim for violation of the Magnuson Moss Warranty Act ("MMWA") on behalf of the nationwide class, alleging that GM breached its express warranties by equipping the Z06 with a defectively designed "'track-proven' powertrain system" that "fails to operate as represented by GM."

Plaintiffs also allege individual claims under the consumer protection statutes of the states in which they seek to represent, based on GM's alleged misrepresentations regarding the track capabilities of the Z06 and on its alleged failure to disclose that the Z06's "track-proven" powertrain system has a defect that leads to overheating and causes the car to go into Limp Mode.

All Plaintiffs other than the two representing Florida also allege individual state law claims for breach of the implied warranty of merchantability, as well as claims for fraudulent concealment and unjust enrichment based on the same alleged misrepresentations and omissions supporting the claims under the state consumer protection statutes.

GM filed a motion to dismiss on July 10, 2018. It is fully briefed. In their response, Plaintiffs withdraw their implied warranty claims under the laws of New York, Tennessee, Virginia, and Washington (Counts 49, 65, 69, and 73, respectively).

## IV. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. The federal rules require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where the facts allow the Court to infer that the defendant is liable for the misconduct alleged. *Id.* This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds"

of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *Twombly*, 550 U.S. at 555 (while detailed factual allegations are not required, a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action"). Ultimately, the question is "'not whether [the plaintiff] will ultimately prevail' . . . but whether [the] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citations omitted).

In deciding a motion under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pled factual allegations, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

## V.     ANALYSIS

Plaintiffs' 70 remaining claims (excluding the four they withdrew) fall into two major categories: warranty claims and fraud claims. As an alternative to the contract-based warranty claims, Plaintiffs bring claims of unjust enrichment. The Court addresses each.

### A.     NEW YORK CLASS ALLEGATIONS

GM argues that the Court should strike Plaintiffs' New York class allegations because there is no named plaintiff with standing to represent the alleged New York class, defined as "[a]ll persons or entities who purchased or leased a 2015-2017

Chevrolet Corvette Z06 in the State of New York." GM says the sole New York plaintiff, David Lawrence ("Lawrence"), is inadequate and not within the class definition because he did not purchase or lease a car in New York.

Plaintiffs say it is premature to decide whether Lawrence has standing to represent the proposed New York class, and that the definition of the New York class could be expanded to include those who were deceived by GM's misrepresentations and omissions in New York, regardless of whether they purchased or leased their car in New York.

"Although class-certification analysis may precede standing analysis when the class certification issue [is] logically antecedent to the standing issue . . . our Court has held that "the 'logical[ly] antecedent' language should be construed in a manner that permits consideration of the standing issue . . . prior to class certification." *Wozniak v. Ford Motor Co.*, No. 2:17-CV-12794, 2019 WL 108845, at *1 (E.D. Mich. Jan. 4, 2019) (internal citations and quotation marks omitted).

Lawrence purchased a Z06 in Maryland and leased a Z06 in Michigan. He, therefore, does not fall within the New York class definition and does not have standing to represent the proposed New York class.

Plaintiffs do not ask to amend the New York class definition; however, if they did, the Court would not allow it. Lawrence, and possibly others, would then fall within multiple class definitions (i.e., New York and Michigan), and proceeding with different scopes of definitions for different states would present other unknown issues that would unreasonably complicate the management of the case.

Lawrence attempts to bring Counts 46-50 on behalf of the New York class. The second allegation under each of those counts is either, "This claims is brought by [Lawrence] on behalf of the New York Class[]" or "[Lawrence] brings this Count on behalf of the New York Class."

Because Lawrence lacks standing to represent the New York class, the Court STRIKES Plaintiffs' New York class allegations. Moreover, because Counts 46-50 were brought on behalf of the now-stricken New York class, the Court DISMISSES those claims and Lawrence.

## B.    IMPLIED WARRANTY CLAIMS

All Plaintiffs other than Florida Plaintiffs allege implied warranty of merchantability claims: Counts 6, 10, 14, 20, 24, 28, 32, 36, 40, 44, 49, 53, 57, 61, 65, 69, and 73.

Because Plaintiffs withdrew their implied warranty claims under the laws of New York, Tennessee, Virginia, and Washington (Counts 49, 65, 69, and 73, respectively), the Court need not address them.

GM says the Court should dismiss Plaintiffs' implied warranty claims because Plaintiffs fail to plausibly/sufficiently allege that their cars were unmerchantable at the time of sale. Alternatively, GM argues that state law privity requirements bar certain implied warranty claims.

### i. Sufficiency of Plaintiffs' Allegations

Except for the state-specific privity arguments, the parties address the implied warranty claims generally under the Uniform Commercial Code.

GM argues that Plaintiffs' implied warranty of merchantability claims should be dismissed because Plaintiffs fail to allege their cars were not fit for the ordinary purpose of providing transportation. However, GM construes unmerchantability too narrowly.

To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." *See* U.C.C. § 2-314(2)(c). Contrary to GM's argument, cars are not merchantable merely because they are able to provide transportation. Rather, to be fit for its ordinary purpose, a standard road vehicle must be able to provide safe and reliable transportation and be substantially free of defects. *See In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 945-46 (N.D. Cal. 2018) (citations omitted) (safety, reliability, operability, and substantial freedom from defects are independent grounds for demonstrating unmerchantability); *see also Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668, 669 (9th Cir. 2013) (to state a viable claim for breach of the implied warranty of merchantability, a plaintiff must allege that the defect rendered a car "unfit for its intended purpose [by] compromis[ing] the vehicle's safety, render[ing] it inoperable, or drastically reduc[ing] its mileage range").

Where, as here, GM marketed the Z06 not just as an ordinary car to be used on public roads, but also as a car to be used on race tracks, the ordinary purpose of the car is not limited to providing safe and reliable transportation on a public road; rather, the car must also be safe and reliable on a race track while remaining substantially free of defects. *See MyFord Touch*, 291 F. Supp. 3d at 945-46; *Tershakovec v. Ford Motor Co.*, 2018 WL 3405245, at *9 (S.D. Fla. July 12, 2018) ("Here, the gravamen of the allegations in the Second Amended Complaint is that Ford falsely marketed Plaintiffs' vehicles as Track-Ready and knew about the alleged Limp Mode defect, despite

continuing to promote their [sic] vehicles as capable of being used or raced on a racetrack. Thus, the question is whether this class of vehicles was 'fit for the ordinary purpose' of [use] on a racetrack, as advertised by Ford.").

Plaintiffs allege that their cars contain a design defect that persistently causes their cars to overheat and go into Limp Mode when used on a track. Some Plaintiffs also allege that their cars have overheated, lost engine power, and/or gone into Limp Mode on public roadways during a variety of conditions. Plaintiffs allege that by causing their cars to overheat, lose engine power, and substantially decrease speed unexpectedly, the defect significantly undermines the reliability of the Z06 and raises serious safety concerns as to its suitability for use on public roads and race tracks. Plaintiffs adequately plead that the Z06's powertrain defect seriously impairs the safety, reliability, and operability of their cars.

Accepting as true Plaintiffs' allegations, the Court finds that Plaintiffs plausibly allege their cars are not fit for the ordinary purpose of providing safe and reliable transportation on public roads and safe and reliable use on race tracks. *See Tershakovec*, 2018 WL 3405245, at *9; *MyFord Touch*, 291 F. Supp. 3d at 947-49. *See also Borkman v. BMW of N. Am., LLC*, 2017 WL 4082420, at *9 (C.D. Cal. Aug. 28, 2017) (finding plaintiff adequately pled an implied warranty claim by alleging the defect "creates hazardous conditions, including loss of power during operation, engine overheating, and potentially, engine failure").

Accordingly, the Court DENIES GM's motion to dismiss Plaintiffs' implied warranty claims for failure to allege their cars were unmerchantable.

### ii. State Law Privity Requirements

GM argues, on a state-by-state basis, that the implied warranty claims of the California (Count 6), Connecticut (Count 14), Georgia (Count 20), Illinois (Count 24), Kansas (Count 28), Nevada (Count 40), and Ohio (Count 53) Plaintiffs should be dismissed because – as consumers who purchased their cars from an authorized dealership instead of directly from GM – they do not stand in vertical contractual privity with GM, as required by each states' laws.

Plaintiffs argue that privity is either not required or there is an applicable exception to the privity requirement under the laws of those states.

GM responds to Plaintiffs' counter-arguments with respect to the law in California, Connecticut, Illinois, Nevada, and Ohio. However, GM failed to respond to Plaintiffs' privity arguments related to Georgia and Kansas law; therefore, the Court finds that GM abandoned its Georgia and Kansas privity arguments.

### a. California Law

Plaintiffs concede that California law requires privity for an implied warranty claim. However, Plaintiffs argue that California's third-party beneficiary exception to the privity requirement applies to them. The Court agrees.

The third-party beneficiary exception "applies when a plaintiff is the intended beneficiary of implied warranties in agreements linking a retailer and a manufacturer." *Roberts v. Electrolux Home Prod., Inc.*, No. CV 12-1644, 2013 WL 7753579, at *10 (C.D. Cal. Mar. 4, 2013).

California Plaintiffs allege they purchased their cars from dealers authorized by GM, that they were the intended beneficiaries of the warranty agreements, and that they

– not the dealers – were the intended consumers of the cars. Moreover, contrary to what GM says, Plaintiffs do allege they relied upon GM's written materials and advertisements.

California Plaintiffs sufficiently allege that the third-party beneficiary exception applied to them. *See Tershakovec*, 2018 WL 3405245, at *11. Accordingly, their breach of implied warranty claim is not precluded by a lack of vertical privity, and GM's motion to dismiss Count 6 is DENIED.

### b. Connecticut and Ohio Law

Plaintiffs concede that Connecticut and Ohio require contractual privity for breach of implied warranty claims. However, Plaintiffs say both states recognize an agency exception to the privity requirement. In their complaint, Plaintiffs allege that "GM-authorized dealerships . . . are agents of GM."

Plaintiffs' conclusory allegation that GM-authorized dealerships are agents of GM is insufficient. And, the fact that the dealerships were authorized GM dealers is insufficient. *See Curl v. Volkswagen of Am., Inc.*, 114 Ohio St. 3d 266, 273 (2007); *Buckeye Res., Inc. v. DuraTech Indus. Int'l, Inc.*, 2011 WL 5190787, at *4 (S.D. Ohio Oct. 31, 2011). Moreover, "[a]s a general rule, '[o]ne who receives goods from another for resale to a third person is not thereby the other's agent in the transaction.'" *Buckeye Res.*, 2011 WL 5190787, at *4 (quoting *Curl*, 114 Ohio St. 3d at 273).

Plaintiffs fail to cite a case in which an authorized dealership was found to have an agency relationship with a manufacturer. Both cases Plaintiffs rely upon found there was no agency relationship between the manufacturer and seller. *See Curl*, 114 Ohio

St. 3d at 273; *Ossolinski v. Ford Motor Co.*, 2014 WL 4638171, at *10 (Conn. Super. Ct. Aug. 12, 2014).

Plaintiffs' breach of implied warranty claims under Connecticut and Ohio law are precluded by a lack of vertical privity. The Court GRANTS GM's motion on these claims and DISMISSES Counts 14 and 53.

### c. Illinois Law

Plaintiffs concede that Illinois law requires privity for an implied warranty claim. However, they argue that Illinois courts have found privity between a purchaser and car manufacturer when the latter provides a written warranty.

Plaintiffs rely on *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 295 (1988), in which the Supreme Court of Illinois held that, for an implied warranty claim under the MMWA – as opposed to an implied warranty claim under Illinois state law – privity is established between the consumer and manufacturer if the manufacturer extended an express warranty to the consumer. Based on that holding, *Rothe* affirmed the appellate court's conclusion that plaintiff's MMWA claim should not be dismissed for lack of privity. *Id.* However, despite the express warranty, *Rothe* also held that plaintiff's implied warranty claim *under state law* was properly dismissed for lack of privity as to GM. *Id.* at 292.

Since Count 24 is an implied warranty claim under Illinois law, Plaintiffs' reliance on *Rothe* is unavailing. Plaintiffs' implied warranty claim under Illinois law fails for lack of privity.

The Court GRANTS GM's motion on this basis and DISMISSES Count 24.

### d. Nevada Law

Plaintiffs argue that vertical privity is not required for implied warranty claims in Nevada. The Court agrees.

"[The Supreme Court of Nevada] has held that 'lack of privity between the buyer and manufacturer does not preclude an action against the manufacturer for the recovery of economic losses caused by breach of warranties.'" *Vacation Village, Inc. v. Hitachi Am., Ltd.*, 110 Nev. 481, 485 (1994) (quoting *Hiles Co. v. Johnston Pump Co. of Pasadena, Cal.*, 93 Nev. 73, 79 (1977)).

GM cites two district court cases in support of its argument that privity is required for implied warranty claims in Nevada; each of those cases relies upon *Long v. Flanigan Warehouse Co.*, 79 Nev. 241 (1963). However, *Long* is not applicable – or, at a minimum, is entitled to less weight than *Hiles Co. and Vacation Village* – because: (1) *Hiles Co.* and *Vacation Village* were decided after, and therefore supersede, *Long*; (2) *Long* deals with horizontal, not vertical, privity; and (3) *Long* was decided under the Nevada Uniform Sales Act, not the Uniform Commercial Code. *See In re Wirsbo Non-F1807 YBFs*, No. 08-CV-1223-F, 2013 WL 12315106, at *5-6 (D. Nev. Nov. 27, 2013) (finding *Long* inapplicable because it deals with horizontal not vertical privity and relying on *Hines* to hold that lack of privity between the buyer and manufacturer does not preclude an implied warranty claim under Nevada law).

Nevada law does not require vertical privity for a breach of implied warranty claim. GM's motion is DENIED as to Count 40.

## C.     MAGNUSON-MOSS WARRANTY ACT ("MMWA") CLAIM

Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim is based on alleged design defects that breach GM's "express warranties."

GM argues that Plaintiffs' MMWA claim should be dismissed because MMWA claims are dependent upon a sustainable claim for breach of warranty under state law, and Plaintiffs do not allege any state law breach of *express* warranty claims.

Moreover, GM says Plaintiffs' MMWA claim fails because the alleged design defect is not covered by GM's express warranty, which covers only defects in "material or workmanship." *See Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 613 (E.D. Mich. 2017) ("A MMWA claim fails as a matter of law if it alleges a design defect, but is brought under an express written warranty covering materials and workmanship." (internal quotation marks and citations omitted)); *Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) ("[T]he overwhelming weight of state law authority holds that design defects are *not* covered under similar warranties.").

Plaintiffs agree that a MMWA claim is "directly dependent upon a sustainable claim of breach of warranty"; however, they say that they allege facts to sustain a MMWA claim based on a breach of implied warranty, and they ask for leave to amend the complaint "to state that Plaintiffs' implied warranty claims are covered under 15 U.S.C. § 2301(7)." Plaintiffs say they need not respond to GM's express warranty argument because they do not allege breach of express warranty claims.

The plain language of Plaintiffs' MMWA claim refers to "express" and "written" warranties; it does not raise or refer to any implied warranty. Thus, GM's arguments have merit; Plaintiffs' MMWA claim fails to state a claim on which relief may be granted.

The Court DISMISSES Plaintiffs' MMWA claim (Count 1) and STRIKES the nationwide class allegations.

The Court declines Plaintiffs' request to file an amended complaint. Requesting to amend the complaint in a response brief is not proper. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) ("Both because the plaintiffs did not present an adequate motion and because they did not attach a copy of their amended complaint, the district court did not abuse its discretion in refusing to allow the plaintiffs to amend their complaint based on the final sentence of the plaintiffs' memorandum in opposition."); *Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) ("A request for leave to amend[,] 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" (citation omitted)).

Moreover, any amendment would likely be futile; the Court would be inclined to grant GM's now moot request to strike Plaintiffs' nationwide class allegations under the MMWA, *see* GM's Motion at pp. 32-34.

### D.  FRAUDULENT CONCEALMENT CLAIMS

Plaintiffs plead common law fraudulent concealment claims under all state laws other than Florida: Counts 5, 9, 13, 19, 23, 27, 31, 35, 39, 43, 48, 52, 56, 60, 64, 68, and 72.

To state a fraudulent concealment, or fraud by omission, claim, Plaintiffs must allege that: (1) GM concealed or omitted a material fact; (2) GM had a duty to disclose; (3) Plaintiffs justifiably relied on the omission of material fact; and (4) Plaintiffs suffered damages as a result. *See Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D.

Cal. 2007) (holding that plaintiffs adequately stated a claim of fraud by omission by alleging that: "GM was bound by a duty to disclose . . .[;] GM failed to disclose [material] information[;] and plaintiffs reasonably claim that they suffered damages after justifiably relying on GM's failure to disclose [the material information]"); *Wozniak v. Ford Motor Co.*, No. 2:17-CV-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019) ("A complaint may suffice under the applicable standard if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect.").

Rule 9(b) imposes a heightened pleading standard which requires Plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). However, "because a plaintiff alleging an omission-based fraud will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim[,]" a plaintiff bringing a fraudulent concealment claim "faces a slightly more relaxed pleading burden . . . [and] can succeed without the same level of specificity required by a normal fraud claim." *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751 (E.D. Mich. 2017) (citations and internal quotation marks omitted).

To maintain their fraudulent concealment claim under Rule 9(b), Plaintiffs must specify "the who, what, when, where, and how" of the alleged omission(s). *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255-56 (6th Cir. 2012). Specifically, Plaintiffs must allege: "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which

the omission was misleading; and (4) what Appellees obtained as a consequence of the alleged fraud." *Id.* at 256.

GM moves to dismiss Plaintiffs' fraudulent concealment claims, arguing that: (1) Plaintiffs do not allege reliance with sufficient particularity; (2) Plaintiffs do not allege GM knew of the alleged defect at the time of the sale; (3) Plaintiffs do not establish a duty to disclose under the law of certain states; and (4) certain Plaintiffs do not allege injury.

### i. Plaintiffs Plead Reliance with Sufficient Particularity

In its motion, GM argued broadly that Plaintiffs' fraudulent concealment claims do not satisfy Rule 9(b)'s particularity requirements: "[P]laintiffs do not identify *what* specific facts GM allegedly omitted about the Z06's track performance capability, *when* or *where* GM omitted those facts, or *why* GM had a duty to disclose them. Plaintiffs also do not say *when* or *where* they allegedly encountered any specific communication by GM, *how* they were misled, or *what* GM gained as a result." (emphasis added).

In response, Plaintiffs cite *Vazquez v. Gen. Motors, LLC*, No. 17-22209-CIV, 2018 WL 447644, (S.D. Fla. Jan. 16, 2018), an order entered on GM's motion to dismiss in one of the parallel proceedings in this litigation, before the proceeding was transferred to this Court. In that order, the Honorable Darrin P. Gayles denied GM's motion to dismiss Plaintiffs' statutory fraud claim under Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), concluding:

> The question . . . is whether the Complaint satisfies Rule 9(b). The Court believes that it does. As described above, Plaintiffs allege numerous specific representations, the precise marketing materials in which those representations were contained, and the manner in which the representations allegedly misled Plaintiffs and similarly situated consumers. Plaintiffs have offered GM sufficiently detailed notice of the precise misconduct Plaintiffs allege, including the what, when, where, and how of the alleged deceptive conduct. This is all that Rule 9(b) requires.

*Vazquez*, 2018 WL 447644, at *6.  Plaintiffs then highlight the allegations in their consolidated class action complaint that satisfy each element of their fraudulent concealment claim and say the Court should follow *Vazquez* and find that their allegations satisfy Rule 9(b).

In its Reply brief, GM drops other "who, what, when, where, and how" arguments and focuses solely on reliance.  GM points out that because reliance is not an element of Plaintiffs' FDUTPA claim, the court in *Vazquez* did not address whether Plaintiffs "have sufficiently pled *reliance* on advertisements for common law fraudulent concealment claims. . . .Plaintiffs must identify the specific GM communications, and also allege that they actually saw those specific statements and relied upon them in making their purchase decisions."  GM says Plaintiffs failed to do this.  The Court disagrees.

As summarized above, *see supra* Section III, Plaintiffs identify specific GM marketing materials, communications, and product information which, they allege, misrepresent the track capabilities of the Z06 and fail to disclose that the Z06 has a defective cooling system that causes overheating, loss of engine power Limp Mode. Plaintiffs adequately allege they saw and relied on those communications and materials in deciding to purchase their cars, and allege that if they knew of the defect they would have either not purchased or paid less for their cars.

The Court finds that Plaintiffs pled the circumstances of the alleged fraud with sufficient particularity.  *See Tershakovec*, 2018 WL 3405245, at *3-4; *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1003 (E.D. Mich. 2017); *Falk*, 496 F. Supp. 2d at 1099.  Indeed, Plaintiffs adequately pled the "who" (GM), the "what"

(knowing about, yet failing to disclose, the alleged cooling system defect), the "when" (beginning in 2014, when GM first marketed the Z06), the "where" (vehicle information kits and brochures, owner manuals for the car, press kits, and GM-sponsored track events), and the "how" (if Plaintiffs knew about the alleged defect, they would have paid less for or not bought/leased their cars).  *See Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751-52 (E.D. Mich. 2017).

Plaintiffs' fraudulent concealment claims satisfy Rule 9(b)'s heightened pleading standard.  *See id.*

### ii. Duty to Disclose – GM's Knowledge at the Time of Sale

To state a fraudulent omission claim, Plaintiffs must allege that GM was aware of the alleged defect at the time of sale.  *Bryde v. Gen. Motors, LLC*, No. 16-CV-02421-WHO, 2016 WL 6804584, at *9 (N.D. Cal. Nov. 17, 2016).

GM argues that Plaintiffs fail to allege that it knew of the alleged defect at the time of sale, as required for a duty to disclose.

Although Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," the rule provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Therefore, Plaintiffs need only "allege generally that [GM's fraudulent] statements or omissions were made with the requisite intent [and knowledge]."  *See Persad v. Ford Motor Co.*, 2018 WL 3428690, at *3 (E.D. Mich. July 16, 2018).

Plaintiffs say GM knew about the defect no later than February 22, 2015, when Corvette's Chief Engineer Tadge Juechter issued a statement that acknowledged and addressed the overheating issue.  They also say it is plausible to infer that GM had prior

knowledge of the defect based on pre-release testing.  Finally, Plaintiffs say consumer complaints about the overheating issue on websites GM monitors gave GM further notice of the defect.

GM says Plaintiffs fail to plausibly allege knowledge, arguing that: (1) Juechter's statement did not acknowledge or address the overheating defect; (2) Plaintiffs' allegations regarding pre-release testing are speculative and do not establish that GM knew of the defect; and (3) consumer complaints are insufficient to plead that GM had knowledge.  Alternatively, GM says that even if Plaintiffs can rely on consumer complaints to allege knowledge, the complaints do not help certain Plaintiffs who purchased their car before the earliest-cited complaint.

### a. Knowledge of the Alleged Defect in the 2015-2016 Z06s

With respect to the 2015 and 2016 models, Plaintiffs plausibly allege that GM knew of the defect at the time of sale based on Juechter's statement and their allegations of pre-release testing.

In his February 22, 2015 statement, Juechter said, among other things, that: (1) the Z06 is designed to be able to "burn through a full tank of gas" on a "'typical racetrack" on an 86 degree Fahrenheit day; (2) GM has "used the 'pro driver at 86 degrees' criteria for generations of Corvettes"; (3) if the Z06 was designed to higher temperature limits, it would require a lot of cooling hardware; (4) the Z06's automatic transmission "optimizes lap time performance" but also taxes the engine more, causing "thermal limitations [to be] reached more quickly"; (5) because the automatic transmission causes the car to reach "thermal limitations . . . more quickly," a person who "plan[s] to run extended track-day sessions at 'professional' speeds[] [is] advised to

go with the manual transmission, or to paddle shift the automatic and select higher gears when conditions warrant it"; and (6) "[o]ur team validates the durability of the Z06 cooling systems with a 24hr accumulated track test to simulate the most aggressive track-day usage by our customers."

Based on these statements and allegations in the complaint – including allegations regarding GM's testing results for the Z06 in marketing/information materials, which one could plausibly infer were created before GM released the Z06 – it is clear that GM tests the Z06 extensively before it reaches the market.

Although its testing showed that the Z06's design caused the car to reach thermal limitations more quickly – and admittedly made the automatic transmission unsuitable for extended track use – GM maintained the same 86 degree limitation it used for "generations." Nevertheless, as Plaintiffs allege, GM promoted increased cooling components on the car, and specifically proclaimed in the Z06's 2015 product information brochure that the car's design provided "increased track capability." [*See* ECF No 17, PgID 337, ¶ 158 ("The larger vents provide more cooling air to the engine, brakes, transmission and differential for increased track capability.")].

Thus, on the one hand, GM represented that the Z06 had better cooling components to increase its track capabilities; yet, on the other, Juechter represents that the Z06 was designed with the same thermal limitations that were used for generations, because to design for a higher temperature limit would require adding a lot of cooling hardware.

It is clear that Juechter and his team – which "validates the durability of the Z06 cooling systems with a 24hr accumulated track test to simulate the most aggressive

track-day usage by [] customers" – thoroughly test the limitations of the Z06 prior to its release. Thus, considering Plaintiffs' allegation that the Z06 "*will* overheat . . . during a typical track session," it is plausible to infer that GM knew of the overheating defect based on the fact that it tested the Z06 under conditions that simulate the *most aggressive* track-day usage. This inference becomes even more plausible based on a sampling of the consumer complaints cited in the complaint – which show the Z06 overheated frequently and quickly when used on a track: (1) "My first track day was last weekend. . . .I was taking it easy and not pushing the car. Ambient temperatures were 85 degrees and . . . [a]fter 5-6 laps the car overheated"; (2) "1st open track day, 1st run, 12 minutes in, oil temp [overheats] and alarms go off on the dash"; and (3) there are "many reports from owners overheating the [Z06] in 80 degree weather or even 70 degree weather. This limitation of the car as sold will be exacerbated in the coming summer months. Many media outlets have reported overheating . . . includ[ing] every occurrence when Motor Trend tested the . . . Z06."

In fact, accepting as true Plaintiffs' allegations regarding the frequency in which the Z06 overheats and enters Limp Mode when used on the track, and in light of how rigorously Juechter says GM track-tests the car, it would be implausible to infer that GM was not aware of the car's alleged defective cooling system as a result of its testing.

Plaintiffs' specific allegations regarding GM's pre-release testing of the Z06's track-based performance capabilities, coupled with Juechter's February 2015 statement, make it reasonable to infer that GM knew of the overheating defect prior to the release of the 2015 and 2016 Z06s. Thus, Plaintiffs sufficiently allege that GM knew of the overheating defect prior to, or at the time of, sale of the 2015 and 2016 models.

*See FCA Gearshift Litig.*, 280 F. Supp. 3d at 1002; *Falco v. Nissan N. Am. Inc.*, 2013 WL 5575065, at *6 (C.D. Cal. Oct. 10, 2013); *Kowalsky v. Hewlett-Packard Co.*, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011).

Plaintiffs state plausible fraudulent concealment claims for the 2015-2016 Z06s.

### b. Knowledge of the Alleged Defect in the 2017 Model

Two plaintiffs allege fraudulent concealment claims based on the 2017 model Z06: Lawrence and John Herold. Because the Court dismisses Lawrence on other grounds, *see supra* Section V(A), it need not discuss his fraudulent concealment claim.

Herold alleges claims under South Carolina law; he is the only Plaintiff who alleges claims on behalf of the proposed South Carolina class. Herold purchased his Z06 in May 2017.

GM argues that Herold cannot plausibly allege it had knowledge about defects in the 2017 Z06 based on complaints about the 2015 and 2016 cars, because the 2017 model had design changes, including "a new hood with larger vents and a new supercharger cover." GM says the only two cited complaints concerning the 2017 Z06 postdate Herold's purchase. Therefore, GM says, Herold fails to sufficiently allege knowledge as required for a duty to disclose.

Plaintiffs do not respond to this argument.

The Court agrees with GM. No consumer complaint regarding the 2017 model Z06 pre-dates Herold's date of purchase, and because the 2017 Z06 had design changes, Herold cannot rely on complaints about the 2015-2016 Z06 to show GM's knowledge. Similarly, Herold cannot rely on Juechter's statement, because it concerned the 2015-2016 models. Moreover, Plaintiffs fail to allege facts related to

GM's testing of the 2017 model and fail to cite materials showing GM knew of the alleged defect in the 2017 Z06.

Herold fails to plausibly allege that GM had knowledge of any defect in the 2017 Z06 at the time he bought his car.

Accordingly, the Court DISMISSES the fraudulent concealment claim under South Carolina law (Count 60).

### iii. Duty to Disclose – State-Specific Arguments

GM moves for dismissal of the fraudulent concealment claims under the laws of Illinois, Michigan, Missouri, Nevada, New York, Ohio, Pennsylvania, South Carolina, Tennessee, and Virginia (Counts 23, 31, 35, 39, 48, 52, 56, 60, 64, and 68), arguing that Plaintiffs fail to establish GM – as a remote manufacturer with no direct relationship with Plaintiffs – had a duty to disclose in those states.

Plaintiffs disagree; they say each of those states recognize a duty to disclose that applies to them: (1) Michigan, Missouri, Nevada, New York, Pennsylvania, and Virginia recognize a duty to disclose when one party has superior knowledge; and (2) a duty to disclose safety defects exists in Illinois, Ohio, South Carolina, and Tennessee.

Because the New York and South Carolina fraudulent concealment claims are dismissed for other reasons, *see supra* Sections V(A), V(D)(ii)(b), the Court need not address the law in those states. Moreover, GM does not respond to Plaintiffs' argument related to Tennessee; therefore, GM abandoned its argument under Tennessee law.

### a. Illinois Law

In its reply brief, GM fails to respond to Plaintiffs' case law and argument related to Illinois law; rather, in a footnote, GM merely re-cites a case it relied on in its motion.

Even if GM is not abandoning its argument under Illinois law, Plaintiffs establish that "a manufacturer of cars . . . owe[s] a duty to consumers under Illinois law to disclose 'safety defects.'" *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 414 (S.D.N.Y. 2017) (citing *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *20 (D.N.J. May 8, 2017)).  Plaintiffs adequately plead that GM had a duty to disclose the alleged overheating defect and associated risks.

Accordingly, the Court DENIES GM's motion to dismiss the Illinois fraudulent concealment claim (Count 23).

### b. Michigan Law

To state a silent fraud claim (i.e., Michigan's version of fraudulent concealment) under Michigan law, "mere nondisclosure is insufficient. There must be circumstances that establish a legal duty to make a disclosure."  *Hord v. Envtl. Research Inst. of Michigan*, 463 Mich. 399, 412 (2000).

GM argues that Plaintiffs' fraudulent concealment claim under Michigan law is not viable because they fail to allege GM made incomplete or misleading statements in response to a specific purchaser inquiry.  The Court agrees.

Under Michigan law:

  "[A] legal duty to make a disclosure will arise most commonly in a situation where inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves but omit material information." *Hord*, 463 Mich. at 412. . . .In fact, one court found that every Michigan Supreme Court case analyzing silent fraud revealed that the silent fraud involved a response to a purchaser's specific inquiry which was in some way incomplete or misleading. *See id.* at 409, 412; *see also Buntea v. State Farm Mut. Auto Ins. Co.*, 467 F. Supp. 2d 740, 745 (E.D. Mich. 2006) ("The misrepresentation occurs when a party suppresses part of the truth when asked, not by mere nondisclosure."). In *Hord*, without any further analysis about the importance of the information or some other factor, the Michigan Supreme Court entered a directed verdict in favor of the defendant

> because the plaintiff never made an inquiry into the . . . allegedly misleading[] information upon which he relied. *Hord*, 463 Mich. at 413.
>
> Similarly, Plaintiffs do not allege that they made a specific inquiry for additional information regarding Cooley's Employment Reports. In fact, Plaintiffs have acknowledged the lack of such an allegation. . . .Furthermore, no other duty . . . gave rise to a duty of disclosure to Plaintiffs. . . .Therefore, as a matter of law, Plaintiffs do not state a silent fraud claim for which relief can be granted.

*MacDonald v. Thomas M. Cooley Law Sch.*, 880 F. Supp. 2d 785, 798-99 (W.D. Mich. 2012), *aff'd*, 724 F.3d 654, 666 (6th Cir. 2013) (affirming district court and holding that "[plaintiffs'] failure to inquire dooms [their] silent-fraud claim. Absent such an inquiry, Cooley had no duty to make any further disclosure.").

Plaintiffs do not allege they made a specific inquiry regarding the Z06's track capabilities or powertrain system.  Accordingly, their silent fraud claim fails to state a claim on which relief may be granted.  *See id.*; *see also Gen. Motors Ignition Switch Litig.*, 257 F. Supp. 3d at 425 ("The Michigan Plaintiffs do not allege that they made any inquiries directly to New GM regarding the safety of their vehicles or the existence of any potential defects. Such a failure to inquire 'dooms the silent-fraud claim.'" (citation omitted)).

The Court GRANTS GM's motion on this ground and DISMISSES the Michigan silent fraud/fraudulent concealment claim (Count 31).

### c. Missouri Law

In Missouri, "[a] duty to disclose only arises when there is a confidential or fiduciary relationship, when there is privity of contract or when 'one party has superior knowledge or information not within the fair and reasonable reach of the other party.'" *In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1535

(E.D. Mo. 1997) (citation omitted).  To establish a duty to disclose based on superior knowledge, a plaintiff must "show that he exercised due diligence to discover the information."  *Id.*

The Missouri Plaintiff, Steven Closser, satisfies his burden for purposes of GM's motion to dismiss.  Under the Missouri fraudulent concealment claim, Closser alleges that: (1) facts regarding the defect "were known and/or accessible only to GM" and "were not known to or reasonably discoverable by [him]"; (2) he "reasonably relied upon GM's deception"; and (3) he "had no way of knowing that GM's representations were false, misleading, or incomplete."

Plaintiffs plausibly allege a duty to disclose under Missouri law.  The Court DENIES GM's motion to dismiss the Missouri fraudulent concealment claim (Count 35).

### d. Nevada Law

In Nevada, "[a] party's superior knowledge . . . imposes a duty to speak in certain transactions, depending on the parties' relationship. 'Nondisclosure will become the equivalent of fraudulent concealment when it becomes the duty of a person to speak in order [for] the party with whom he is dealing [to] be placed on an equal footing.'"  *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1486 (1998) (citation omitted).  "The duty to disclose requires, at a minimum, some form of relationship between the parties."  *Id.* at 1487.

While GM did not have a fiduciary relationship or a "special relationship" with Plaintiffs, it had "some form of relationship" with them; unlike the defendant in *Dow Chem. Co.* – which was not the manufacturer, *see id.* at 1475 – GM manufactured the Z06 and offered express and implied warranties to Plaintiffs.  Plaintiffs allege that: (1)

GM had superior knowledge of the overheating defect and "actively concealed" its existence; and (2) they reasonably relied upon GM's deception and had no way of knowing its representations were false, misleading, and incomplete.

Based on these facts, the Court finds Plaintiffs plausibly alleged that GM had a duty to disclose under Nevada law. *See Dow Chem. Co.*, 114 Nev. at 1486 ("a duty to disclose may arise from 'the existence of material facts peculiarly within the knowledge of the party sought to be charged and not within the fair and reasonable reach of the other party'" (citation omitted)); *Volkswagen Timing Chain*, 2017 WL 1902160, at *19 (finding that plaintiffs sufficiently pled a duty to disclose under Nevada law based on defendant's superior knowledge).

The Court DENIES GM's motion to dismiss the Nevada fraudulent concealment claim (Count 39).

### e. Ohio Law

Plaintiffs say Ohio recognizes a "duty to disclose safety defects . . . which applies here [pursuant to] *In re Takata Airbags Prods. Liability Litig.*, No. 15-md-2599, slip op. at 11, 15, 21-22 & 31 (S.D. Fla. Oct. 14, 2016) (permitting fraudulent concealment claims in Ohio based on duty to disclose safety defects)."

GM says the *Takata* case Plaintiffs rely upon "does not address whether Ohio permits fraudulent concealment claims on a duty to disclose defects."

The Court reviewed the October 14, 2016 *Takata* order and found no discussion of a fraudulent concealment claim under Ohio law. The decision also does not address whether there is a duty to disclose a safety defect under Ohio law. Plaintiffs cite no

other authority to show GM had a duty to disclose under Ohio law. Accordingly, Plaintiffs fail to demonstrate that GM had a duty to disclose under Ohio law.

The Court GRANTS GM's motion on this ground and DISMISSES Plaintiffs' fraudulent concealment claim under Ohio law (Count 52).

### f. Pennsylvania Law

GM acknowledges that Pennsylvania law recognizes a duty to disclose for remote manufacturers with superior knowledge, but says: (1) the duty to disclose is limited to "known serious and life threatening latent defects . . . *i.e.* those defects which are likely to cause significant bodily harm," *see Zwiercan v. Gen. Motors Corp.*, 2003 WL 1848571, at *2 (Pa. Com. Pl. Mar. 18, 2003); and (2) the Pennsylvania Plaintiff, Brian Nakel, "does not allege any life threatening latent defect; he alleges only that his 'vehicle heats up very quickly and [he] is concerned that the vehicle will overheat and go into Limp Mode if he drives it fast.'"

In response, Plaintiffs say: "GM nitpicks that Plaintiff Nakel did not use the words 'life-threatening.' But, *Zwiercan* is clear that there is a duty to disclose defects likely to cause bodily harm. Plaintiff Nakel also pleads serious safety implications."

Although Nakel alleges that the Z06's powertrain defect poses safety risks, is dangerous, and increases the risk of accident, he fails to allege the defect has caused, or is likely to cause, significant bodily harm; Nakel does not even allege that the defect has caused any injuries or any accidents – and neither do the other Plaintiffs.

This distinguishes Nakel's case from *Zwiercan* – the only case Nakel relies upon; there, the plaintiff alleged that the defect "has caused, and is likely to continue to cause serious bodily injury or death to Class Vehicle occupants." *Zwiercan*, 2003 WL

1848571, at *1; *see also id.* at *2 ("Plaintiff has alleged facts that, if true, support finding that the alleged defect in the front seats of Defendant's Class Vehicles are likely to cause paralysis or even death.").

Because Nakel does not plead that the defect has caused, or is likely to cause, serious bodily harm, he fails to plausibly allege that GM has a duty to disclose under Pennsylvania law. *See id.*

The Court GRANTS GM's motion on this ground and DISMISSES Plaintiffs' fraudulent concealment claim under Pennsylvania law (Count 56).

### g. Virginia Law

A duty to disclose may arise under Virginia law "if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999).

Plaintiffs allege that: (1) GM had superior knowledge of, and intentionally concealed, the Z06's powertrain defect; and (2) if they knew of the defect, they would have either paid less for the car or not purchased it at all – making the existence of the defect a material fact. Thus, Plaintiffs adequately plead that GM had a duty to disclose under Virginia law. *See In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *39 (S.D.N.Y. July 15, 2016) ("Given that [the] defect could constitute a 'material fact' that New GM concealed from [plaintiff] and that New GM was plainly in a position of superior knowledge with respect to that fact, the Court concludes that [plaintiff] adequately pleads that New GM had a duty to disclose.").

The Court DENIES GM's motion to dismiss the Virginia fraudulent concealment claim (Count 68).

### iv. Plaintiffs Sufficiently Allege Injury

GM next argues that Plaintiffs Suren Manukyan (California), Stephen Kanas (New Hampshire), and Brian Nakel (Pennsylvania) cannot establish injury as a matter of law, because their cars have not actually manifested the Limp Mode defect. GM says the Court should dismiss their fraudulent concealment claims (Counts 5, 43, and 56, respectively). In its motion, GM cites one case to support its argument, *see Miller v. Gen. Motors, LLC*, No. 17-CV-14032, 2018 WL 2740240, at *12 (E.D. Mich. June 7, 2018) ("Plaintiffs . . . do not allege that their vehicle has ever malfunctioned in this fashion. Thus, they fail to establish that they suffered any detriment connected to GM's alleged failure to disclose the Power Liftgate Defect.").

Because the Court dismisses Nakel's fraudulent concealment claim on other grounds, *see supra* Section V(D)(iii)(f), it need not discuss him here.

Manukyan and Kanas say GM's argument fails for several reasons, one of which is that they allege their cars have manifested the defect. The Court agrees with Plaintiffs.

GM is correct that Manukyan and Kanas do not allege that their cars have gone into Limp Mode. However, Manukyan alleges his car overheated and lost engine power on a public road; he also alleges that, on a separate occasion, his car got stuck in gear while on the highway, "immediately de-rated and slowed down to around 40 mph, and would not shift or go any faster." Kanas alleges that his car has overheated on public roads.

The Court finds Manukyan and Kanas sufficiently allege manifestation of the defect to survive dismissal under Rule 12(b)(6). Manifestation of the defect is not limited to the car experiencing Limp Mode; rather, Plaintiffs allege the Z06 has a defective cooling system that causes the engine to overheat, leading to unexpected loss of power and sometimes Limp Mode. They allege overheating and loss of engine power on public roads and/or a race track undermines the Z06's reliability and makes the car inherently dangerous. Manukyan and Kanas plausibly allege injury.

The Court DENIES GM's motion to dismiss Manukyan and Kanas' fraudulent concealment claims (Counts 5 and 43) for failure to allege injury.

### E. STATE CONSUMER PROTECTION CLAIMS

Plaintiffs assert 22 counts under state consumer protection statutes, *see supra* Section II, Table of Claims. Plaintiffs allege that GM engaged in deceptive and unfair business practices by intentionally and knowingly misrepresenting the Z06's track capabilities and failing to disclose the overheating defect. Without GM's deceptive conduct, Plaintiffs say they would have paid less for their cars or not bought them.

Because Plaintiffs' consumer protection claims sound in fraud, they must meet Rule 9(b)'s heightened pleading standard. *See Miller*, 2018 WL 2740240, at *14.

GM moves to dismiss Plaintiffs' consumer protection claims, arguing that: (1) Plaintiffs do not adequately plead deceptive advertising, reliance, causation, or injury under Rule 9(b); (2) Plaintiffs do not sufficiently allege GM knew of the alleged defect at the time of sale; and (3) certain claims are barred on state-specific grounds.

### i. Sufficiency of Plaintiffs' Allegations

GM's first two arguments are materially the same as its first two fraudulent concealment arguments, which the Court addressed and overruled above.

Except with respect to Herold – who fails to allege GM knew of a defect at the time he bought his 2017 Z06, *see supra* Section V(D)(ii)(B) – the Court incorporates the discussion and reasoning from above and finds that Plaintiffs plausibly allege the who, what, when, where, and how of GM's purported fraud/deceptive trade practices. Therefore, they satisfy Rules 9(b) and 12(b)(6).

The Court GRANTS GM's motion to dismiss Herold's consumer protection claim under South Carolina law (Count 59) for failure to plausibly allege GM knew of a defect at the time of sale.

GM's motion to dismiss the other Plaintiffs' consumer protection claims on this ground is DENIED.

### ii. State-Specific Arguments

GM argues that certain claims are barred on state-specific grounds. The Court addresses GM's arguments below; however, it does not address GM's arguments related to claims brought under New York law (Counts 46 and 47) or South Carolina law (Count 59), because those claims are dismissed on other grounds, *see supra* Sections V(A), V(E)(i).

### a. Georgia Fair Business Practices Act and Tennessee Consumer Protection Act

Plaintiffs bring two consumer protection claims under Georgia law; this argument applies only to their Georgia Fair Business Practices Act ("GFBPA") claim.

GM says Georgia and Tennessee "preclude class actions under their consumer protection statutes, and therefore the class action allegations under these laws fail as a matter of law."

Plaintiffs do not contest that the GFBPA and Tennessee Consumer Protection Act ("TCPA") bar class actions. However, they say GM ignores settled law holding that class actions may continue even if a state consumer protection statute precludes them, so long as applying Fed. R. Civ. P. 23 does not abridge, enlarge or modify any substantive right. Plaintiffs cite the United States Supreme Court's plurality decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

This Court, like "the majority of district and circuit courts" that have considered the issue, finds that Justice Stevens' concurrence is the controlling opinion in *Shady Grove*. *See Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 60 (E.D.N.Y. 2017) (collecting cases).

Justice Stevens' approach "focus[es] on whether the state law had a substantive purpose and acknowledge[es] the possibility that [a] state rule[] that [is] otherwise procedural 'may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy,' and . . . should not be preempted by a conflicting federal rule." *See Delgado v. Ocwen Loan Servicing, LLC*, 2017 WL 5201079, at *8 (E.D.N.Y. Nov. 9, 2017) (quoting *Shady Grove*, 559 U.S. at 420 (Stevens, J., concurring in part and concurring in the judgment)). "Under this view, Justice Stevens concluded that the determination of whether a state rule is supplanted by a federal rule depends not on 'whether the state law at issue takes the form of what is traditionally described as substantive or procedural' but rather on

40

'whether the state law actually is part of a State's framework of substantive rights or remedies.'" *Id.* (quoting *Shady Grove*, 559 U.S. at 419 (emphasis in original)).

Applying this approach, this Court finds that the class action prohibitions set forth in the GFBPA and TCPA define the scope of the state-created rights and are therefore substantive and not displaced by Rule 23. *See Delgado*, 2017 WL 5201079, at *10 (finding that the class action bar in the Georgia and Tennessee consumer protection statutes demonstrates a "substantive policy choice . . . to limit not only the form of the action but also the remedies available," such that they apply over Rule 23); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014) (holding that "[p]laintiffs cannot maintain a class action as to the alleged consumer-protection statutory violations in [] Georgia . . . and Tennessee" because their statutory prohibitions of class actions define the scope of the state-created rights and are therefore substantive in nature); *Bearden v. Honeywell Int'l Inc.*, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010) ("[T]his court finds that the class-action limitation contained in the TCPA is so intertwined with that statute's rights and remedies that it functions to define the scope of the substantive rights.").

Accordingly, Plaintiffs cannot maintain class actions under the GFBPA and TCPA. The Court GRANTS GM's motion on this basis and DISMISSES Plaintiffs' claims under the GFBPA (Count 17) and TCPA (Count 63).

### b. Colorado Consumer Protection Act

GM says Plaintiffs' class action claim for damages under the Colorado Consumer Protection Act ("CCPA") fails as a matter of law, because the CCPA bars class claims for money damages. The Court agrees with GM.

The plain language of the CCPA bars monetary damages in class actions. *See* Colo. Rev. Stat. § 6-1-113(2) ("***Except in a class action*** . . . any person who, in a private civil action, is found to have engaged in . . . any deceptive trade practice . . . shall be liable [for monetary damages]." (emphasis added)); *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1219 (D. Colo. 2012) ("[§ 6-1-113(2)] defines a defendant's liability under the CCPA in a private action. It limits such liability to specified remedies, and expressly states that such remedies are not applicable in class actions. By logical extension, the CCPA creates no statutory liability for a defendant in a private class action."); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 2015 WL 4036319, at *3 (D. Colo. July 1, 2015) ("[T]he plain language of the statute appears to preclude monetary damages and treble damages in class actions under the CCPA brought in a private civil action such as this one.").

Plaintiffs' reliance on *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861 (E.D. Mich. 2009), is unavailing. *OnStar* relied on *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274 (Colo. App. 1993), which construed a previous version of § 6–1–113(2). The Court finds *Friedman* persuasive; it construes the current version of the statute and distinguishes *OnStar*. *See Friedman*, 2015 WL 4036319, at *5.

Accordingly, the Court GRANTS GM's motion on this ground and DISMISSES Plaintiffs' class claim for money damages under the CCPA (Count 8). The Court does not dismiss Plaintiffs' request for injunctive relief under the CCPA.

### c. Michigan Consumer Protection Act

GM says Plaintiffs' claim under the Michigan Consumer Protection Act ("MCPA") must be dismissed because motor vehicle sales are exempt from the MCPA.

Plaintiffs say: "Courts routinely reject GM's argument and allow MCPA claims for automobile defects to proceed."

The Court agrees with GM.

The MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1). The Michigan Supreme Court construes this exemption broadly, finding that "the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210 (2007) (citation and internal quotation marks omitted).

The general transaction in this case (i.e., the sale of a new car by a licensed dealer) is one specifically authorized and regulated by law; thus, it is exempt from the MCPA. *See Jimenez v. Ford Motor Credit Co.*, 2015 WL 9318913, at *7 (Mich. Ct. App. Dec. 22, 2015) (finding that the sale of a motor vehicle by a licensed dealer was an exempt transaction under the MCPA because it was "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States"); *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *3 (E.D. Mich. Oct. 21, 2016) (dismissing MCPA claim upon finding that Toyota's alleged deceptive advertising conduct was exempt from the MCPA because Michigan "regulates how car wholesalers like Toyota advertise automobiles" and "regulates the content of general automobile advertisements").

Plaintiffs cite three cases in support of their contention that "Courts routinely reject GM's argument and allow MCPA claims for automotive defects to proceed." The

Court finds these cases unpersuasive in light of the cases cited above. One of Plaintiffs' cases does not discuss the MCPA. *See In re Duramax Diesel Litig.*, 2018 WL 3647047, at *7 (E.D. Mich. Aug. 1, 2018). Another discusses the MCPA but does not address whether motor vehicle sales are exempt from the MCPA. *See Gen. Motors Ignition Switch Litig.*, 257 F. Supp. 3d at 420-24. The one case that discusses the exemption held that "the specific act of selling an automobile or manufacturing an automobile is not regulated and therefore that act is not excluded from the [M]CPA." *See Hoff v. Mercedes-Benz USA, LLC*, 2005 WL 3723201, at *8 (Mich. Cir. Ct. Dec. 30, 2005). However, as a state trial court decision, *Hoff* has no precedential value. Moreover, *Hoff* was decided before the Michigan Supreme Court issued *Liss*, and the Court finds that it is inconsistent with *Liss*. *See Feliciano v. Gen. Motors LLC*, 2016 WL 9344120, at *13 (S.D.N.Y. Mar. 31, 2016) ("The Court finds that [*Hoff*] is inconsistent with the subsequent holding of *Liss*.").

GM's motion to dismiss the MCPA claim (Count 30) is GRANTED. Count 30 is DISMISSED.

### d. Georgia Uniform Deceptive Trade Practices Act

Injunctive relief is the only remedy available under Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA"). *See Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1364 (N.D. Ga. 2012); O.C.G.A. § 10-1-373(a) ("A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable.").

"To have standing to seek injunctive relief under the [G]UDTPA, a plaintiff must show . . . that she is 'likely to be damaged' in the future by some deceptive trade

practice of the defendant." *Id.* "A plaintiff who demonstrates past harm, but does not allege ongoing or future harm, has not shown that he is 'likely to be damaged' within the meaning of section 10-1-373(a)." *Silverstein v. Procter & Gamble Mfg. Co.*, 2008 WL 4889677, at *4 (S.D. Ga. Nov. 12, 2008).

GM says the Court should dismiss Plaintiffs' GUDTPA claim because the Georgia Plaintiff, Dwayne Grant, "has not alleged that he (or any putative Georgia class member) is likely to suffer future harm from any alleged deceptive trade practice by GM."

Plaintiffs say they sufficiently allege "ongoing and future harm" because they "plead that GM continues to install defective cooling systems in new Z06s and has failed to adequately fix or replace the . . . cooling systems installed in existing Z06s."

Plaintiffs' allegation that GM continues to install defective cooling systems in new Z06s fails to allege ongoing or future harm; Plaintiffs have already bought a Z06, are now aware of the alleged defect, and do not allege they are likely to buy another Z06. *See Silverstein*, 2008 WL 4889677, at *3; *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1294 (N.D. Ga. 2018) ("Plaintiffs have not alleged that they will likely buy another class vehicle. They do not allege that putative class members are likely to again be misled by Mercedes' advertising. In short, Plaintiffs have plausibly alleged that they have been damaged, but they have not sufficiently alleged that they are 'likely to be damaged' again by Mercedes advertising and marketing."). This allegation cannot sustain Plaintiffs' GUDTPA claim.

Plaintiffs' allegation that GM has not fixed or replaced the alleged defective cooling system also is insufficient to state a plausible claim under GUDTPA. Although

Plaintiffs allege they will suffer ongoing and future harm because of the alleged defect, that harm is the result of GM's previous alleged deceptive trade practice, and an injunction would not prevent the reoccurrence of the harm alleged. *See Amin*, 301 F. Supp. 3d at 1294 ("Nor do Plaintiffs' allegations about the near-certain reoccurrence of the mold and mildew qualify under this section. While this is harm that will likely occur in the future if Plaintiffs' allegations are true, it is the result of a previous alleged deceptive trade practice. . . .[A]n injunction would not prevent the reoccurrence of the harm alleged by Plaintiffs."). Notably, Plaintiffs do not allege that GM's mere failure to act (i.e., failure to fix or replace the alleged defective cooling system) is in anyway deceptive or creates a likelihood of confusion. Accordingly, it is not a deceptive trade practice under O.C.G.A. § 10-1-373(a) and cannot support Plaintiffs' GUDTPA claim.

Neither of the allegations Plaintiffs rely upon is sufficient to state a plausible claim under GUDTPA. Moreover, Plaintiffs' allegation of harm under their GUDTPA claim further demonstrates that the claim must be dismissed for failure to allege *ongoing* or *future* harm a result of a deceptive trade practice. [*See* ECF No. 17; PgID 406, ¶ 401 ("[Grant] and the Georgia Class **suffered** an ascertainable loss and actual damages as a . . . result of GM's concealments, misrepresentations, and/or failure to disclose material information.") (emphasis added)]. The claim contains no allegation that Plaintiffs continue to suffer harm or will suffer harm in the future because of GM's deceptive trade practices.

GM's motion to dismiss Plaintiffs' GUDTPA claim (Count 18) is GRANTED and Count 18 is DISMISSED.

### e. Ohio Consumer Sales Practices Act

GM says Plaintiffs' consumer protection claim under Ohio law is time-barred because: (1) the Ohio Plaintiff, John Bleich, bought his car on August 2, 2015 but did not bring a claim until February 20, 2018; and (2) the Ohio Consumer Sales Practices Act ("OCSPA") provides a two-year statute of limitations to bring a claim with no discovery exception.

Plaintiffs acknowledge that OCSPA provides a two-year statute of limitations; however, they say "Ohio recognizes that the doctrine of fraudulent concealment can toll this time limitation . . . [and they] have sufficiently alleged fraudulent concealment."

The case Plaintiffs cite for that proposition, *see Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 890-91 (N.D. Cal. 2018), merely states that Ohio "recognizes the doctrine of fraudulent concealment" without addressing its applicability/inapplicability to an OCSPA claim or discussing contrary law which concludes Ohio law does not allow tolling of OCSPA claims, *see Zaremba v. Marvin Lumber & Cedar Co.*, 458 F. Supp. 2d 545, 552 (N.D. Ohio 2006) ("Where a plaintiff seeks recovery of damages under the [O]CSPA, the limitations period is absolute, and the discovery rule does not apply"); *Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810, at *10, n. 17 (N.D. Cal. June 28, 2017) (holding that "Ohio law does not allow tolling of the consumer protection statute" and "[t]he parties did not identify, and the Court did not locate, any case applying a fraudulent concealment theory to toll an [OCSPA] claim.").

Despite this conflicting law, the Court need not determine whether fraudulent concealment can toll the limitations period for an OCSPA claim; even assuming that it

can, Plaintiffs fail to plead sufficient facts to plausibly allege that the doctrine of fraudulent concealment should toll the statute of limitations for their OCSPA claim.

Plaintiffs say they sufficiently allege fraudulent concealment based on paragraphs 750-760 of the complaint (which are all the allegations under their OCSPA claim) and based on the general allegations supporting their common law fraudulent concealment claims. However, all of these allegations go toward GM's alleged misrepresentations and omissions of material fact *before* Plaintiffs bought their Z06, which GM allegedly made to induce Plaintiffs into buying their cars.

Importantly, however, Plaintiffs cannot rest on GM's alleged fraudulent concealment that purportedly induced them to purchase a Z06. Rather, for fraudulent concealment to toll the statute of limitations, Plaintiffs must show GM took affirmative acts which were "designed to prevent, and which [did] prevent, discovery of the cause of action." *See Phelps v. Lengyel*, 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002); *Thornton v. State Farm Mut. Auto Ins. Co.*, 2006 WL 3359448, at *6 (N.D. Ohio Nov. 17, 2006) ("fraudulent concealment requires some affirmative act by the defendant designed to prevent discovery of the cause of action").

Plaintiffs' reliance on the same misrepresentations GM allegedly made regarding the track capabilities of the Z06 is insufficient to establish that the statute of limitations for its OCSPA claim should be tolled; "the Ohio Supreme Court explained that plaintiffs must 'establish that **subsequent** and **specific** actions by defendants somehow kept them from timely bringing suit.'" *Thornton*, 2006 WL 3359448, at *6 (quoting *Doe v. Archdiocese of Cincinnati*, 109 Ohio St. 3d 491, 502 (2006)). Plaintiffs fail to do this.

Plaintiffs also cannot rely on GM's alleged omissions of material facts or GM's failure to disclose the existence of the alleged defect after they bought their Z06s. "Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *See Browning v. Levy*, 283 F.3d 761, 770 (6th Cir. 2002) (citation omitted); *Helmbright v. City of Martins Ferry*, 61 F.3d 903, 1995 WL 445730, at *1 (6th Cir. July 26, 1995) ("mere silence or unwillingness to divulge wrongful activities is not sufficient" to invoke the doctrine of fraudulent concealment).

The doctrine of fraudulent concealment does not apply to Plaintiffs' OCSPA claim because Plaintiffs fail to allege that any subsequent and specific actions by GM were designed to prevent, and did prevent, them from discovering their cause of action. In fact, based on Plaintiffs' allegation regarding the frequency in which the Z06 overheated, one could only plausibly conclude that discovery of the alleged defect was easy and/or routine, and certainly not concealed by GM.

The Court GRANTS GM's motion on this ground and DISMISSES Plaintiffs' OCSPA claim (Count 51).

### f. California Unfair Competition Law and California False Advertising Law

GM says Plaintiffs can only seek injunctive under California's consumer protection claims if they show no adequate remedy at law is available. Plaintiffs disagree. Both sides cite several cases to support their position.

"District courts are split on whether a plaintiff's claims for equitable relief should be dismissed at the pleading stage." *Safransky v. Fossil Grp., Inc.*, 2018 WL 1726620, at *14 (S.D. Cal. Apr. 9, 2018); *see also Luong v. Subaru of Am., Inc.*, 2018 WL

2047646, at *7 n. 6 (N.D. Cal. May 2, 2018); *Aberin v. Am. Honda Motor Co., Inc.*, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018).

The Court will not address this issue at this junction.  Plaintiffs' claims under California's Unfair Competition Law (Count 3) and False Advertising Law (Count 4) may proceed.  GM's motion to dismiss these claims is DENIED.

### g. Failure to Allege Injury – Manukyan, Kanas, and Nakel

GM argues that Manukyan, Kanas, and Nakel fail to allege injury because their cars have not manifested the defect.  This is the same argument GM made regarding these Plaintiffs' fraudulent concealment claims, addressed *supra* in Section V(D)(iv).

For the same reasons, the Court rejects GM's argument and finds Manukyan and Kanas pled sufficient facts to plausibly allege injury.

The Court did not address Nakel's allegations of injury because his fraudulent concealment claim failed on other grounds.  Nevertheless, the Court DENIES GM's motion to dismiss Nakel's consumer protection claim (Count 55) for failure to allege injury because: (1) GM fails to cite a case addressing injury and manifestation of a defect under the Pennsylvania consumer protection statute; and (2) Nakel pled sufficient facts to survive dismissal.

### F.    UNJUST ENRICHMENT CLAIMS

GM says the Court should dismiss Plaintiffs' unjust enrichment claims because, among other reasons, a written contract (i.e., GM's express warranty) governs the subject matter of the dispute.  Plaintiffs assert several arguments in response to GM's motion, none of which is availing.

"Because there is an express warranty governing the subject matter at issue here, Plaintiffs' unjust enrichment claims must be dismissed." *Vazquez*, 2018 WL 447644, at *7.

The Court GRANTS GM's motion to dismiss Plaintiffs' unjust enrichment claims and DISMISSES Counts 7, 11, 15, 21, 25, 29, 33, 37, 41, 45, 50, 54, 58, 62, 66, 70, and 74.

## VI.    CONCLUSION

Consistent with the above conclusions, and as set forth in the Table of Claims (*supra* Section II), the Court **GRANTS IN PART** and **DENIES IN PART** GM's motion to dismiss.

The Court **STRIKES** the nationwide class allegations.

Moreover, because all of Plaintiffs' claims under New York and Ohio law are dismissed, the Court **STRIKES** the New York and Ohio class allegations and **DISMISSES** David Lawrence and John Bleich.  All other Plaintiffs have at least one remaining claim.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  March 29, 2019